**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

HERLINDA C. MAYO,

      Plaintiff,

vs.                                          CIV No. 02-0222 JB/RLP

FOWLER FITNESS, INC.,
(d/b/a Defined Fitness),

      Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

    **THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment (Doc. 72). The primary issue is whether the Defendant, Fowler Fitness, Inc. (d/b/a Defined Fitness)("Defined Fitness"), has established that there is no genuine issue of material fact whether it discriminated against the Plaintiff, Herlinda C. Mayo ("Mayo"), on the basis of her national origin and age. Mayo asserts that Defined Fitness discriminated against her when it denied her the opportunity to work as a water aerobics instructor, a step aerobics instructor, a spinning class instructor, a swimming instructor, and a land personal trainer.[1] Mayo also alleges that Defined Fitness terminated her employment with the same discriminatory motives. Because the Court finds that there is no genuine issue of material fact regarding these issues, and that Defined Fitness is otherwise entitled to judgment as a matter of law, the Court grants the motion for summary judgment on all remaining claims.

---

    [1] Defined Fitness also seeks summary judgment on Mayo's claims for failure to give her the Group Fitness Director position. Because the Court dismissed that claim on August 27, 2003 (Doc. 90), on timeliness grounds, the Court will deny the motion as moot to the extent it seeks judgment on those claims.

## PROCEDURAL POSTURE

On May 17, 2002, Mayo filed her First Amended Complaint for Damages ("Complaint") setting forth six separate counts.  The Complaint contains counts for age and national origin discrimination, breach of contract, breach of implied covenant of good faith and fair dealing, and wrongful termination.  Pursuant to rule 56 of the Federal Rules of Civil Procedure, Defined Fitness has moved the Court for summary judgment against Mayo.

In its motion papers, Defined Fitness sets forth 53 paragraphs of what it contends are undisputed material facts.  Defined Fitness attempts to support most or all paragraphs with citations to the record.  In her response, Mayo does not specifically controvert any of the 53 paragraphs, but instead sets forth 11 paragraphs of "Disputed Material Facts."  For nine of the paragraphs, Mayo cites only her deposition as support.  For two more of those "Disputed Material Facts," Mayo cites as support only her complaint.

Mayo does not controvert most or all of the facts set forth in Defined Fitness' Memorandum in Support of its Motion for Summary Judgment (Doc. 73).  Accordingly, most or all of the facts that Defined Fitness set forth in its brief are deemed admitted.  Rule 56 of the Federal Rules of Civil Procedure states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).  In addition, the Local Rules for the District of New Mexico provide:

> A memorandum in opposition to the motion [for summary judgment] must contain a concise statement of the material facts as to which the party contends a genuine issue

2

does exist.  Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the opposing party relies, and must state the number of the movant's fact that is disputed.  **All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted.**

D.N.M. LR-Civ. 56-1(b)(1999)(emphasis added).

Mayo may not rest upon her pleadings.  The burden shifts to Mayo to go beyond the pleadings and to set forth specific facts that would be admissible in evidence in the event of trial and from which a rational trier of fact could find for Mayo.  See Adler v. Mal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998).  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."  Id.

In Reed v. Nellcor Puritan Bennett, 312 F.3d 1190 (10th Cir. 2002), the United States Court of Appeals for the Tenth Circuit discussed the ramifications of a non-moving party's failure to respond to or controvert facts that the movant asserts in a summary judgment motion:

By failing to file a response within the time specified by the local rule, the nonmoving party waives the right to respond or to controvert the facts asserted in the summary judgment motion.  The court should accept as true all material facts asserted and properly supported in the summary judgment motion.  But only if those facts entitle the moving party to judgment as a matter of law should the court grant summary judgment.

Id. at 1195.  Mayo's Response does not controvert or refute the facts set forth in the following paragraphs of Defined Fitness' brief: 1-4, 6-11, and 13-53.  As a result, the Court will deem all these facts admitted and will accept them as true.  See Hagelin for President Comm. of Kan. v. Graves, 25 F.3d 956, 959 (10th Cir. 1994).

The importance of filing an adequate response and specifically referencing facts in the record is especially true in employment discrimination cases, which often involve numerous incidents over

3

long periods of time, numerous documents, and lengthy depositions of numerous witnesses.  See Adler v. Wal-Mart Stores, Inc., 144 F.3d at 672.  Mayo has not made any arguments as to why this Court should ignore the law deeming all uncontroverted facts as true.  Without material facts in controversy, the Court should enter summary judgment if the law permits it.

## FACTS

Mayo is highly experienced as a fitness instructor, with over 20 years of experience.  See Vol. I Deposition of Herlinda Mayo at 5, line 17-20 (taken March 7, 2003).  Fowler Fitness, Inc. owns and operates a fitness club doing business as Defined Fitness.  Mayo is a former Defined Fitness employee who, at all material times to the Complaint, was an Hispanic female over age 40.  See Complaint ¶ 4, at 1.

Defined Fitness hired Mayo on or about September 14, 1999, as a part-time water aerobics instructor.  See Complaint ¶ 10, at 3; Answer ¶ 10, at 3; Vol I Mayo Depo. at 31, lines 20-25; Affidavit of Pattie Poindexter ¶ 13, at 2 (executed May 29, 2003).  At various times, Mayo expressed an interest in instructing step classes and spinning classes.  See Mayo Depo. at 36, lines 2-9; id. 42, lines 19-23; Poindexter Aff. ¶¶ 16, 17, at 2.

Mayo did not officially apply for the position of step instructor or spinning instructor.  See Mayo Dep. at 36, lines 2-9; id. at 42, lines 19-23; Poindexter Aff. ¶¶ 18, 19, at 2.  Mayo did not perform a demonstration for Defined Fitness of her abilities in these areas.  See Mayo Depo. at 43, line 25 to p. 44, lines 1-4, 13-18; Poindexter Aff. ¶ 29, at 3.  At the time that Mayo inquired about the spinning instructor position, she did not hold a spinning instructor certification.  See Mayo Depo. at 38, lines 6-10; Poindexter Aff. ¶ 28, at 3.  Defined Fitness did not give Mayo a chance to audition for the position of spinning instructor or step aerobics instructor.  See Mayo Depo. at 44, lines 2-4.

Mayo also expressed an interest in teaching swimming lessons at Defined Fitness.  <u>See</u> Mayo Depo. at 34, lines 6-11; Affidavit of Anndee Wright Brown ¶ 18, at 2 (executed May 29, 2003). Mayo did not, however, officially apply for the position of swimming instructor.  <u>See</u> Mayo Depo. at 34, lines-9-10 to p.35, lines 4-7; Brown Aff. ¶¶ 20-21, at 2.  At the time Mayo inquired into teaching swimming lessons, no such position existed; Defined Fitness had previously eliminated the position.  <u>See</u> Mayo Depo. at 35, lines 8-13; Brown Aff. ¶ 19, at 2.

Mayo inquired into working as a land personal trainer at Defined Fitness.  <u>See</u> Mayo Depo. at 46, lines 21-23; Deposition of Jim Lezeau at 4, lines 24-25 to p. 5, line 1; Affidavit of James Lezeau ¶ 5, at 1 (executed May 29, 2003).  Mayo did not officially apply for the position of land personal trainer.  <u>See</u> Mayo Depo. at 46, lines 10-13, 19-23; Lezeau Aff. ¶ 6-7, at 1.  Mayo did not demonstrate for Defined Fitness her abilities as land personal trainer.  <u>See</u> Mayo Depo. at 47, lines 7-23; Lezeau Aff. ¶ 14, at 2.  At the time that Mayo inquired into the position of land personal trainer, no job opening was available.  <u>See</u> Mayo Depo. at 4, lines 9-13; Lezeau Aff. ¶ 8, at 1.

People over the age of 40 years old received many of the various employment positions that Mayo sought during the time period at issue.  <u>See</u> Affidavit of Shannon Moore ¶¶ 21-22, at 2-3 (executed May 29, 2003).  People of Mexican and/or Hispanic descent received many of the various positions that Mayo sought during the time period at issue.  <u>See</u> Moore Aff. ¶¶ 23-24, at 3.   The demographic makeup of Defined Fitness' management team indicates that Defined Fitness has hired a diverse population with respect to age and national origin.  <u>See</u> Moore Aff. ¶¶ 25-27, at 3; Brown Aff. ¶¶27-29, at 3.  The demographic makeup of Defined Fitness' corporate board of directors indicates that Defined Fitness is governed by a diverse population with respect to age and national origin.  <u>See</u> Brown Aff. ¶¶ 30-32, at 3.

5

All individuals who have received a land personal trainer position with Defined Fitness have had formal training, experience, and/or degrees in exercise science or exercise physiology.  See Lezeau Depo. at 5, lines 2-11 to p.6, lines 6-17; Lezeau Aff. ¶¶ 9, 11, 13, at 1-2.  Mayo lacked the formal training, experience, and relevant degrees that all other land personal trainer candidates had.  See Lezeau Depo. at 5, lines 12-14; Lezeau Aff. ¶¶ 10, 12 at 1-2.  Mayo was less qualified than other individuals who received the position of land personal trainer.  See Lezeau Aff. ¶¶ 9-13 at 1-2.

Mayo's ending rate of pay as a water aerobics instructor was $15.00 per class.  See Poindexter Aff. ¶20, at 2.  If she had received the position of spinning instructor or step instructor, her rate of pay would have been $15.00 per class.  See Poindexter Aff. ¶21, at 3.  The positions of step aerobics instructor and spinning instructor provided the same amount of hours for instructors as the position of water aerobics instructor.  See Poindexter Aff. ¶22, at 3.

The positions of step aerobics instructor and spinning instructor did not have any more prestige, rights, or entitlements when compared to the position of water aerobics instructor.  See Poindexter Aff. ¶22-24, at 3.  The positions of step aerobics instructor and spinning instructor had the same level of responsibilities when compared to the position of water aerobics instructor.  See Poindexter Aff. ¶24, at 3.  The starting base for a land personal trainer with Defined Fitness was $7.25 per hour.  See Lezeau Aff. ¶15, at 2.

People over the age of 40 years old received many of the various positions sought by Plaintiff during the time period in question.  See Moore Aff. ¶¶ 21-22, at 2-3.  People of Mexican and/or Hispanic descent received many of the various positions sought by Plaintiff during the time period in question.  See Moore Aff ¶¶ 23-24, at 3.

Mayo believes that her supervisors treated her poorly.  See Mayo Depo. at 51 lines 8-17.

6

Mayo's supervisors tried to undermine her with management.  See Mayo Depo. at 53, lines 13-24.

A Defined Fitness employee also made a racial comment while at work.  See Mayo Depo. at 85, lines

9-19; at 87, lines 1-13.

Mayo's employment with Defined Fitness came to an end on July 11, 2001.  See Mayo Depo.

at 12, lines 8-11; Moore Aff. ¶28, at 3.   Mayo testified that Defined Fitness terminated her because

she reported a theft and because she objected to discrimination against another employee.  See Mayo

49, lines 17-21.  However, Mayo's husband, Steven Mayo, told Mayo that he wanted her to quit her

employment with Defined Fitness.  See Mayo Depo. at 20, lines 18-19; Deposition of Steven Mayo

at 10, line 8 (taken March 17, 2003).  On July 11, 2001, Mayo advised Natalie Roache, the interim

Group Fitness Director, that Mayo's husband wanted her to quit working at Defined Fitness.  See

Affidavit of Natalie Roache ¶ 13, at 2 (executed May 29, 2003).  In that same conversation, Mayo

stated to Roache that, although Mayo did not want to resign she did not have any other choice.  See

Roache Aff. ¶ 14, at 2.  When Mayo tendered her immediate resignation, she stated that she was

afraid for her safety at work because her keys had been stolen and her car had been broken into. That

same day, Mayo stated to Roache that she was not capable of giving two weeks notice.  See Roache

Aff. ¶¶ 15, 16, at 2.  Mayo later repeated these statements in an e-mail to Roache.  See e-mail from

Mayo to Roache (dated July 17, 2001).

The July 17, 2001 e-mail from Mayo to Roache contains the following statements by Mayo:

(i) "Yes, it is true my husband didn't want me to teach at DF anymore because he was concerned of

my safety at that moment"; (ii) "Yes, I did mention that I didn't want to do that, resign . . . but at that

moment I couldn't see any alternative or choice . . . ."; (iii) "You are right it was my obligation to

give my two weeks notice.  I didn't feel I could do that because of what had happened"; and (iv) "I

did review your Policy/Manual and I do understand the principal of at-will employment."   The

Defined Fitness employee manual provided that Mayo's employment was at-will.   <u>See</u> Mayo Depo.

at 74, lines 13-14, 25, to p.75, lines 1-8; e-mail from Mayo to Roache (dated July 17, 2001); Brown

Aff. ¶¶ 33-34.

Mayo testified that she did not resign or indicate to Defined Fitness that she wanted to resign

her position.   <u>See</u> Mayo Depo at 20, lines 6-19.   At her deposition, Mayo stated that she did not

communicate that she wanted to resign, but was only expressing her state of mind after being

victimized at Defined Fitness' premises.   <u>See</u> Mayo Depo. at 21, lines 20-23.   Mayo also stated that

she felt that she may have had no alternative but resignation because of the way Defined Fitness

treated her.   <u>See</u> Mayo Depo. at 20, line 22 to p.21, line 1.

### <u>STANDARDS FOR DECIDING A MOTION FOR SUMMARY JUDGMENT</u>

Rule 56 of the Federal Rules of Civil Procedure allows a court to grant summary judgment

if a party is entitled to judgment as a matter of law and there are no genuine issues of material fact.

<u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).   To avoid summary judgment, the non-

moving party must contradict facts specifically averred by the movant.   <u>See</u> <u>Lujan v. National Wildlife</u>

<u>Fed'n</u>, 497 U.S. 871, 888 (1990).   The court must deny a motion for summary judgment when a

genuine issue of material fact remains to be tried, or where the moving party is not entitled to a

judgment as a matter of law.   <u>See</u> <u>Kennedy v. Silas Mason Co.</u>, 334 U.S. 249, 252 (1948).

The moving party bears the initial burden of establishing the absence of any genuine issue of

material fact.   <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 323.   The moving party can meet this burden

by "pointing out to the court a lack of evidence as to an essential element of the non-movant's claim.

The burden then shifts to the non-movant to present specific facts, admissible at trial, from which a

rational trier of fact could find for the non-movant."  Bewley v. City of Duncan, 149 F.3d 1190

(table), 1998 WL 314382, *4 (10th Cir. 1998)(citing Fed. R. Civ.  P. 56(c); Celotex Corp. v. Catrett,

477 U.S. at 324).  Once the moving party meets its burden, the burden shifts to the non-moving party

to demonstrate that genuine issues remain for trial "as to these dispositive matters for which it carries

the burden of proof."  Applied Genetics Int'l v. First Affiliated Secs., Inc., 912 F.2d 1238, 1241 (10th

Cir. 1990).  The non-moving party may not rest on her pleadings but must set forth specific facts.

See id. at 1241.  Under rule 56(e), only statements made with actual knowledge will support a motion

for summary judgment; the court must disregard statements of mere belief.  See Tavery v. United

States, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994)(citations omitted).

          For the purposes of summary judgment, the court will assume the evidence of the non-

moving party to be true, will resolve all doubts against the moving party, construe all evidence in the

light most favorable to the non-moving party, and draw all reasonable inferences in the non-moving

party's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  If "the evidence,

interpreted favorably to the plaintiff, could persuade a reasonable jury that the employer had

discriminated against the plaintiff," the court should deny summary judgment.  MacDonald v. Eastern

Wyoming Mental Health Ctr., 941 F.2d 1115, 1121 (10th Cir. 1991).

          The court should, however, grant summary judgment "if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(c).  A factual dispute is "material" only if it "might affect the outcome of

the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  A "genuine"

factual dispute requires the non-moving party to show more than a mere scintilla of evidence to

overcome a motion for summary judgment.  Id. at 252.

The court may grant summary judgment if the non-moving party's evidence is merely colorable or is not significantly probative.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 250-51.  "In a response to a motion for summary judgment, a party cannot rest on ignorance of the facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 251-52.

## LEGAL ANALYSIS

### I.    MAYO'S CLAIMS OF DISCRIMINATION UNDER TITLE VII AND THE ADEA (COUNTS I AND IV).

The Supreme Court of the United States' ruling in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), sets forth a three-pronged burden shifting analysis that applies to Mayo's claims of age and national origin discrimination.  See id. at 802-804.  To initially survive summary judgment, an employee must establish a prima facie case of discrimination by a preponderance of the evidence.  See Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 529 (10th Cir. 1994).  If the employee establishes a prima facie case, then a presumption of discrimination arises, and the burden shifts to the employer to rebut the presumption by producing evidence that it had legitimate, nondiscriminatory reasons for its actions.  See McDonnell Douglas Corp. v. Green, 411 U.S. at 802-803; Sorenson v. City of Aurora, 984 F.2d 249, 352 (10th Cir. 1993).  This step "only requires that the [employer] explain its actions against the [employee] in terms that are not facially prohibited by Title VII."  EEOC v. Flasher Co., Inc., 986 F.2d 1312, 1317 (10th Cir. 1991).

Once the employer articulates a legitimate, nondiscriminatory reason for the action taken against the employee, the employer has rebutted the presumption of discrimination.  See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. at 804.  The burden then reverts to the employee to "present[] evidence that the defendant's proffered reason for the employment decision was pretextual--i.e. unworthy of belief[.]"  Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995).

## A.   MAYO DID NOT PROVIDE ANY ARGUMENT REGARDING THE ALLEGED DENIAL OF THE VARIOUS POSITIONS.

The Response does not contain any argument, legal authority, supporting evidence, affidavits, or other documents to contest Defined Fitness' contentions related to the various employment positions and to the requested transfer.  Instead, the response focuses on the circumstances surrounding her departure from employment with Defined Fitness as a water aerobics instructor. Defined Fitness met its burden under rule 56 by providing affidavits, citations to the record, and other evidence supporting its arguments with respect to the various employment positions and the transfer of facilities which Mayo alleges that Defined Fitness denied her.

Mayo, to meet her burden, must offer evidence, by reference to affidavits, deposition transcripts, or specific exhibits, in admissible form, of specific facts sufficient to raise a genuine issue for trial.  See Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992), cert. denied, 506 U.S. 1013 (1992); Fed. R. Civ. P. 56(c).  Mayo has not met her burden to show this Court that a genuine factual dispute exists as to any other employment positions, including the step instructor, the spinning instructor, the swimming instructor, and the land personal trainer.  Similarly, Mayo has not met her burden related to the alleged denial of a request to transfer to another facility.

11

After considering the uncontroverted facts in this case, the Court concludes that Defined Fitness is entitled to judgment as to all claims related to the denial of the various employment positions and to the claims related to the denial of the request to transfer.  It is reasonable for the Court to conclude that, given that Mayo did not respond to this portion of Defined Fitness' brief, she has abandoned her claims on these motions.[2]

### B.        MAYO FAILS TO ESTABLISH A PRIMA FACIE CASE.

The question whether there are disputed issues of material fact on Mayo's prima facie case is substantially similar for her claims based upon her national origin and for her claims based upon her age.  The Court will therefore consider these two claims together.

To establish a prima facie case for discrimination based on national origin and/or age regarding a failure to transfer and/or a failure to promote,[3] Mayo must present sufficient evidence to support the following elements: (i) there was a promotional opportunity; (ii) she was qualified for the opportunity; (iii) she was not promoted; and (iv) the promotional opportunity was filled.  Deflon v. Danka Corp., 2001 WL 13260, *9 (10th Cir. Jan. 5, 2001).  To establish a prima facie case for discriminatory discharge, Mayo must present sufficient evidence to support the following elements: (i) she belongs to a protected class; (ii) she was qualified for her job; (iii) despite her qualifications,

---

[2] At the hearing on this motion, Mayo's counsel stated that she was not abandoning these claims, but did concede that her Response brief did not respond to the Motion for Summary Judgment on these claims and that the termination claim rather than any claims for other positions sought, was actually the strongest part of her case.  See Transcript of Hearing, Excerpt at 2, line 15, to 3, line 7; 5, line 11 to line 18.

[3] While the parties' briefing identifies the same prima facie elements for discriminatory failure to promote and discriminatory discharge, the Tenth Circuit has provided specific guidance that different elements apply in the failure to promote context.  See Deflon v. Danka Corp., 2001 WL 13260, *9 (10th Cir. Jan 5, 2001)(identifying prima facie elements for discriminatory failure to promote); Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1362 (10th Cir. 1997)(same).

she was discharged; and (iv) her job was not eliminated after she was discharged.[4]  English v. Colorado Dep't of Corrections, 248 F.3d 1002, 1008 (10th Cir. 2001).

Mayo has not shown evidence to support all of these elements.  Mayo has not shown that disputed material facts exist regarding a prima facie case for discrimination on the basis of age and national origin.  Defined Fitness supports its position, and Mayo's response has not refuted Defined Fitness' position.

### 1.   Mayo Does Not Meet Her Prima Facie Burden to Establish Discriminatory Failure to Promote.

#### a.   Promotional Opportunities Did Not Exist Because the Positions Mayo Sought Constituted Lateral Transfers.

The Tenth Circuit has clarified that, in a discriminatory failure to promote case, the opportunity sought by the plaintiff that is the subject of dispute must actually be a promotion; that is, the plaintiff does not meet this first element if the position sought merely constitutes a lateral transfer.  See Deflon v. Danka Corp., 2001 WL 13260 at *9.  Specifically, the Tenth Circuit requires that the denial of plaintiff's application for the position sought amount to an "adverse action" under Title VII.  Id. ("[T]here is no evidence in the record to show that . . . [the] position was, in fact, a promotion for [the plaintiff], and this court has found that the denial of an application for a lateral

_____

[4] In the briefing, the parties identified this fourth element as including analysis whether the plaintiff's replacement was a member of the protected class.  See Memorandum Brief in Support of Motion for Summary Judgment at 10; Response at 4.  Recent Tenth Circuit decisions have specifically rejected articulations of the fourth element to require that the plaintiff was treated less favorably or that the plaintiff was replaced by someone outside the protected class, and specified that the fourth element should mirror the fourth element of a discriminatory failure to hire case.  See Kendrick v. Penske Transportation Servs., Inc., 220 F.3d 1220, 1229 (10th Cir. 2000)("[T]he district court erroneously required [the plaintiff] to show . . . [that the defendant] treated similarly situated nonminority employees differently . . . .  [The plaintiff] need only show that . . . (4) the job was not eliminated after his discharge.").

position is not an adverse employment action under Title VII.").

The Tenth Circuit has held that a lateral transfer, without more, does not constitute an adverse employment action where the transfer would not alter the employee's salary, benefits, and/or responsibilities.  See Sanchez v. Denver Pub. Sch., 164 F.3d 527, 532 (10th Cir. 1998).  In making such a ruling, the Sanchez court stated: "[W]e will not consider 'a mere inconvenience or an alteration of job responsibilities' to be an adverse employment action."  Id.  Conduct is an adverse employment action if it "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998).

Mayo does not controvert that Defined Fitness did not take any adverse employment action on the failure to promote or to transfer.  Mayo does not provide any evidence or argument to controvert the fact that Mayo has not suffered any adverse employment action, including, but not limited to, the denial of various other employment positions and the denial of a transfer to another facility.  As stated previously, the Court must accept Defined Fitness' contentions on these issues as true.

**Request to Transfer**

In support of her claims, Mayo alleges that Defined Fitness' denial of her request to transfer to another Defined fitness location in the same employment capacity was an adverse employment action.  Such action by Defined Fitness, even if assumed to be true, does not constitute an adverse employment action.  Defined Fitness' denial of Mayo's request to transfer to another location in her same capacity as a water aerobics instructor amounts to the denial of a lateral move and does not affect the terms, conditions, or status of Mayo's employment. See Sanchez v. Denver Pub. Sch., 164

14

F.3d 527, 532 (10th Cir. 1998)(affirming district court holding that lateral transfer did not amount to adverse employment action).

In seeking the requested transfer, Mayo in this case sought to have Defined Fitness assign her to a different location at the same rate of pay, the same amount of hours, the same status, the same position of a water aerobics instructor, the same job responsibilities, and the same prestige.  See Poindexter Aff. ¶25, at 3.  On this issue, there are no disputed facts.  Thus, Defined Fitness' denial of Mayo's request to transfer to another location does not constitute an adverse employment action.

**Spinning and Step Aerobics Instructor**

Mayo also alleges that she suffered an adverse employment action when Defined Fitness did not authorize her to instruct spinning aerobics and step aerobics classes. These employment positions do not constitute more than a lateral transfer, because they are identical in terms of compensation to the water aerobics position that Mayo held.  These positions of spinning aerobics instructor and step aerobics instructor do not offer anything different from the water aerobics class that Mayo taught except for the fact that the focus of the underlying exercise is different.  Aside from this difference related to the courses' technique, Mayo does not dispute the position of water aerobics instructor is identical in all respects to the position of spinning instructor and step aerobics instructor in terms of rate of pay, amount of hours, status, job responsibilities, and prestige.  As a result, these positions are the equivalent of a lateral transfer, and Defined Fitness' denial of Mayo's opportunity to work in these positions does not constitute an adverse employment action.

**Water Aerobics Instructor**

Mayo also alleges that she applied for the position of water aerobics instructor and that Defined Fitness denied her that position.  See Complaint ¶ 15, at 3.  This argument does not have a

basis in fact.  Mayo does not dispute that this is the position that Defined Fitness initially hired Mayo to fill.

Mayo worked continuously in this position from her date of hire on September 14, 1999 through the date of her resignation on July 11, 2001.  See Mayo at 31, lines 20-25; Poindexter Aff. ¶13, at 2.  The Charge of Discrimination that Mayo signed and filed with the EEOC states that the position she held was that of water aerobics instructor.  There is no factual basis for Mayo's contention that Defined Fitness denied her the opportunity to work in the capacity when this was the job that Defined Fitness specifically assigned to her for almost two years.

There cannot be an adverse employment action with respect to a refusal to teach water aerobics.  That is the job that Mayo performed for Defined Fitness.

**Swimming Instructor**

Mayo also contends that she suffered an adverse employment action when Defined Fitness did not permit her to teach swimming lessons.  Mayo does not dispute that, at the time of her inquiry, Defined Fitness had discontinued its swimming lessons program.  Mayo has no factual basis for her contention that she suffered an adverse employment action when Defined Fitness denied her the opportunity to work as a swimming instructor.

There was no swimming instructor job opportunity with Defined Fitness available to Mayo or to any other individual.  Defined Fitness' refusal to award Mayo with an employment position that did not exist does not constitute an adverse employment action.  See Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1362 (10th Cir. 1997).

**Land Personal Trainer**

Mayo also contends that Defined Fitness' denial of an opportunity for her to work as a land personal trainer is an adverse employment action.  There is no factual basis for the Court to consider the position of land personal trainer to be a promotion for Mayo.  She does not dispute that her rate of pay as an aerobics instructor was $15.00 for a one hour class and the position of personal trainer paid at a starting rate of $7.25 per hour.

This large discrepancy in the pay rate between the aerobics instructor position and the personal trainer position shows that the personal trainer position was not a "promotion."  Defined Fitness' alleged denial of  Mayo's request to work as a land personal trainer does not constitute an adverse employment action.

**b.**     **Mayo Was Not Qualified for the Other Positions She Sought.**

While Mayo contends that she was qualified for the positions that she sought, and that she had more than enough experience to conduct the other classes, Mayo does not provide evidence to support her contention.  The law requires Mayo, at a minimum, to provide sufficient evidence to demonstrate that "she possesses the objective qualifications necessary to perform the job sought." EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1193 (10th Cir. 2000).  Mayo does not meet this burden.

With respect to each position that Mayo allegedly sought, Mayo does not demonstrate that she had received education or training related to instructing such classes; that she had experience teaching such classes; or that she had certification for instructing such classes.  Mayo concedes that, at the time she allegedly applied for the spinning instructor position, she did not have the requisite certification.  See Mayo Depo. at 38, lines 6-10.

Mayo does not controvert that she was not qualified for most positions.  Instead, her

Response focuses on her qualifications for the water aerobics position, which was the position she actually held with Defined Fitness. Mayo does not provide evidence aimed at creating a dispute about her lack of qualifications for the other positions she allegedly sought, including step classes, spinning classes, swimming classes, and land personal training. No factual dispute exists about the fact that Mayo was not qualified for those positions. By not providing evidence on the second element of her prima facie case, Mayo has not shown an essential element of her prima facie case. Accordingly, the Court will enter summary judgment in favor of Defined Fitness.[5]

### c.    The Other Positions Were Filled.

Mayo has not created a genuine issue of material fact that any of the positions she sought were actually promotional opportunities or whether she was qualified for these positions except for the one she held. Mayo has also not shown that the positions she allegedly sought were filled, as required by the fourth element of her claim for discriminatory failure to promote.

With regard to Mayo's requested transfer to another location, the record does not disclose that there was an actual opening for this transfer. Mayo cannot meet the fourth element and establish that the position was filled.

With regard to the positions of spinning and/or step aerobics instructor, again it is not apparent from the record that Mayo ever applied for any specific opening for either of these positions. The record does establish that Defined Fitness did employ spinning and step aerobics instructors, but it does not establish that either position was open, that Mayo actually applied for such opening, and that any opening for which Mayo applied was filled.

---

[5] Mayo meets the third element of her prima facie case for discriminatory failure to promote because the undisputed facts establish that she was not promoted while employed by Defined Fitness and did not receive any of the positions she allegedly sought.

18

With regard to Mayo's position of water aerobics instructor, this is the position that Mayo held before to the conclusion of her employment with Defined Fitness. The record does establish that various individuals took over Mayo's water aerobics classes once she left Defined Fitness. See Defined Fitness' Answer to Plaintiff's Interrogatory No. 11 (hereinafter "Answer to Interogatory No. 11"). Because this is the position Mayo actually held, however, it cannot be termed a "promotional opportunity" that she sought.

With regard to the position of swimming instructor, as previously noted, this position no longer existed. Mayo does not meet the fourth element because the position did not exist and could not, therefore, be filled.

With regard to the position of land personal trainer, the record does not establish that Mayo actually sought or applied for a specific opening as a land personal trainer. The record establishes that, at the time Mayo expressed an interest in the land personal trainer position, no opening was available. See Lezeau Aff. ¶ 8, at 1. Mayo does not, therefore, meet the fourth element with regard to this position because there is no evidence that a specific opening Mayo sought was then filled.

Mayo does not meet her prima facie burden to establish discriminatory failure to promote. She did not refute Defined Fitness' factual statements in her Response, so those facts are deemed admitted. Further, considering the record as a whole, the Court does not find that she satisfactorily meets all four of her prima facie elements.

## 2.   Mayo Does Not Meet Her Prima Facie Burden to Establish Discriminatory Discharge.

### a.   Mayo is a Member of a Protected Class.

Defined Fitness does not dispute that Mayo is a member of a protected class. She is of Hispanic/Mexican origin. Moreover, during the course of her employment with Defined Fitness,

Mayo was between the ages of 40 and 70 years old.  Defined Fitness disputes, however, that Mayo can prove all the other elements of her prima facie case.

### b.      Mayo was Qualified for the Position She Held.

Mayo has over twenty years of experience as a fitness instructor, and she regularly takes classes and attends seminars to ensure that she is up to date on exercises and techniques.  See Mayo Dep. at 5, lines 17-20.  Mayo contends that she was qualified for the position she held, because she performed it for almost two years.  Mayo contends that Defined Fitness terminated her from a position for which she was qualified.

Mayo contends that Defined Fitness did not give her any reason for her termination that would imply that her performance was unsatisfactory.  See Response Brief at 5.  There is evidence in the record that Mayo was qualified for the position that she held.  Accordingly, she meets this element of her prima facie case for termination.

### c.      Defined Fitness Did Not Terminate Mayo.

Fatal to Mayo's prima facie case for discriminatory discharge is the fact that Defined Fitness did not terminate her from her position as a water aerobics instructor; rather, Mayo resigned this position.  Mayo cannot, therefore, meet the third element of her prima facie case that, despite her qualifications, she was terminated.

Mayo suggests that there is a dispute surrounding her termination.  Defined Fitness argues that Mayo voluntarily resigned her position; Mayo contends that she did not "intend" to resign and that Defined Fitness terminated her.  Mayo's mere assertion, however,  that she did not "intend" to resign, but was terminated, is insufficient to create a genuine issue of material fact whether she suffered the adverse action of termination.  Mayo must point to some fact in the record supporting

her allegation of termination.

A review of the facts indicates that they can be reconciled without there being a dispute of any material fact.  In her deposition, Mayo indicated that she did not intend to resign from her position at Defined Fitness.  <u>See</u> Mayo Depo. at 20, line 10 to 21, line 23.  Close to the actual time of the alleged termination, however, Mayo sent an email to Natalie Roach stating: "Yes, I did mention that I didn't want to do that, resign . . . but at that moment I couldn't see any alternative or choice because my acting Aerobics Director didn't offer any word of reconciliation."  Email from Mayo to Roache (dated July 17, 2001).  The email also stated: "You are right it was my obligation to give my two weeks notice."  <u>Id.</u>  <u>See</u> <u>also</u> Roache Aff. ¶¶ 13-17, at 2.  These statements indicate that, at the time, Mayo may not have wanted to resign but did, in fact, believe that she was doing so.  Moreover, even if her "intent" is any evidence of termination, a mere scintilla of evidence does not preclude summary judgment.  Mayo has not raised a genuine issue of material fact whether she was terminated and has not, therefore, established the adverse action element of her prima facie case for termination.

### d. Mayo's Position Was Not Eliminated.

Mayo's position as a water aerobics instructor was not eliminated.  In fact, the record shows that a number of other employees took over her classes when Mayo resigned without giving two weeks notice.  Mayo does meet this fourth element of her prima facie case.

While Mayo does establish that she is a member of a protected class, that she was qualified for her position and that her position was not eliminated, she does not meet her prima facie burden to establish discriminatory discharge because she has not shown that Defined Fitness terminated her.

### C. LEGITIMATE NON-DISCRIMINATORY REASONS EXIST FOR ALL ACTIONS TAKEN.

Even if Mayo had set forth a prima facie case for either discriminatory failure to promote or

discriminatory discharge, Defined Fitness has articulated legitimate, non-discriminatory reasons for the actions it took with respect to Mayo. Defined Fitness did not provide her with the various employment positions for a variety of reasons. The reasons include: (i) that Mayo did not officially apply for the positions; (ii) that she was not qualified for the positions; and/or (iii) that there were not any positions open or available. With respect to Mayo's alleged termination from employment, Defined Fitness contends that it did not terminate her. Instead, Mayo resigned her employment without providing Defined Fitness with any advance notice. Even if Mayo did not intend to resign, Defined Fitness thought otherwise, and there is considerable evidence that Defined Fitness' conclusion had a good faith basis in fact. Defined Fitness has thus met its burden to present legitimate, non-discriminatory reasons for its actions.

### D.      THERE IS NO EVIDENCE OF PRETEXT.

Mayo does not provide admissible evidence that Defined Fitness' proffered reasons for any action it took with respect to Mayo were pretextual or unworthy of credence. "[D]istrict courts, when analyzing the pretext issue, do not sit as 'super-personnel departments' free to second-guess the business judgment of an employer." Bullington v. United Airlines, Inc., 186 F.3d 1303, 1318 n.14 (10th Cir. 1999). The relevant inquiry is not whether the action that Defined Fitness took against Mayo was "wise, fair or correct," but whether Defined Fitness "honestly believed those reasons and acted in good faith on those beliefs." Id. at 1318. Further, a "challenge of pretext requires [the Court] to look at the facts as they appear to the person making the decision to terminate plaintiff." Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1231 (10th Cir. 2000).

### 1.      Mayo Does Not Show that Defined Fitness' Reasons for any Adverse Employment Action were False.

One way in which a plaintiff can show pretext is by providing evidence that the proffered reasons are false.  Mayo has not provided such evidence.  Mayo certainly believes that Defined Fitness' denial of the various positions and termination of her employment were unlawfully motivated and that Defined Fitness' reasons are false.  Mayo's beliefs alone, however, are insufficient to create a genuine dispute that the proffered reasons were pretext.  See Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988)("[P]laintiff's mere conjecture that their employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.").  Mayo must provide other evidence to support an assertion that the employer's explanation is false.  See id. at 771.  The record does not reveal any evidence to controvert the undisputed facts that Defined Fitness discontinued the swimming position; that no land personnel trainer positions were available; and that Mayo never officially applied for any of the positions that she sought.

Additionally, Mayo does not dispute the events surrounding the end of her employment with Defined Fitness.  Someone stole Mayo's keys and broke into her vehicle.  Mayo was concerned about the break in.  Mayo's husband told her to quit her job at Defined Fitness.  Mayo told her supervisor, Roache, that, although she did not want to resign, she could not see any other alternative.  Roache asked if Mayo could provide two weeks notice.  Mayo stated that she could not provide two weeks notice.  Based upon these facts, Mayo's employment with Defined Fitness ended.  These undisputed facts do not support any contention by Mayo that Defined Fitness' proffered reasons were pretextual.

### 2.   Mayo Does Not Show that Defined Fitness Treated Her Differently from Other Similarly Situated Employees.

Mayo also does not show pretext by providing evidence that Defined Fitness treated her differently from other similarly situated employees who engaged in comparable behavior.  See Kendrick v. Penske Transp. Servs., Inc., 220 F.3d at 1230.  Without elaboration or supporting

evidence, Mayo contends that Defined Fitness "did not subject white employees to adverse treatment for conduct similar or equal to Plaintiff's."   Complaint ¶ 23, at 4.  There is, however, no evidence in the record to support this accusation.

When asked in the Interrogatories "to identify which White employees were not subjected to adverse treatment for conduct similar to [or] equal to your conduct," Mayo, in her supplemental response, stated that an "unknown Anglo employee" received different treatment.  Supplemental Response to Interrogatory No. 20. Moreover, Mayo's response does not pertain to any alleged adverse action that Defined Fitness took against her.  Instead, the reference to an "unknown Anglo employee" pertained to alleged differential treatment that another employee, Winona Sanchez, experienced.

Further, this alleged differential treatment related to a complaint regarding treatment for being late.  See Deposition of Winona Sanchez at 35, lines 16-25, to p.36, lines 1-14.  Being late does not have anything to do with the issues before this Court.  Sanchez testified that she did not know if Defined Fitness reprimanded other employees, including the unknown Anglo employee, for engaging in conduct similar to Sanchez.  See Sanchez Depo. at 42, lines 2-11.

Without citation to the record, and without providing supporting affidavits, Mayo argues in her Response: "No person outside of Plaintiff's protected class was treated so unfairly."  Response at 5.  "Under Fed. R. Civ. P. 56(e), only statements 'made on personal knowledge' will support a motion for summary judgment; statements of mere belief must be disregarded."  Tavery v. United States, 32 F.3d 1423, 1426 n.4 (10th Cir. 1994)(citing Automatic Radio Mfg. Co. v. Hazeltime Research, 339 U.S. 827, 831 (1950), overruled in part on other grounds by Leer, Inc. v. Adkins, 395 U.S. 653 (1969)).  Mayo must provide admissible evidence to support her contention that Defined

Fitness treated her less favorably than individuals outside of her protected class.  Mayo's arguments in her Response are not enough.

The only citations to the record that Mayo makes in support of her contention that she was treated less favorably do not, in fact, support her contention.  Paragraph seven of the Response states: "Plaintiff's supervisors harassed her and treated her poorly."  Response Brief at 3 (citing Mayo Depo. at 51, lines 8-17).  The testimony that Mayo cites, however, related specifically to Mayo's retaliation claims, not to any claim that she was treated less favorably as a form of discrimination.  <u>See</u> Mayo Depo. at 51, lines 8-17.  Retaliation claims are separate and distinct from discrimination claims. Moreover, even if the Court were to consider Mayo's testimony with regard to her retaliation claims as potential evidence of discrimination, her testimony does not support any specific or discernible claims of less favorable treatment:

> A:   I think that is what Margaret thought, I don't like for her to be talking to Patty about me.  So I will say she was trying to give me a hard time somehow.
>
> Q:   Okay.
>
> A:   I don't know.
>
> Q:   Nor do I.
>
> A:   I perceived that attitude.  You know, every time I would go in to do something, she was mad or aggressive, really.

Mayo Depo. at 51, lines 8-17.

Paragraph eight of the Response states: "Plaintiff's supervisors tried to undermine her with management."  Response Brief at 3 (citing Mayo Depo. at 53, lines 13-24).  This testimony does not provide the Court with any specific evidence that would allow an inference that Mayo was treated less favorably than others outside her protected class:

[A:]    Then, after that, I found a note on my card that Jim, personal trainer instructor, wanted to talk to me. And I was kind of surprised because he never went back to me before. So I went and talked to him, and he told me, "I hear that you are doing personal training in the water without my permission." And I said, "No, who told you that?" And he said, "Margaret told me." And I said, "When did that happen?" And he said, "This day," and it happened to be the day that I was on the pool with this lady. And I said, "No, Jim. I wasn't doing any personal training on my own."

Mayo Depo. at 53, lines 13-24. Again, Mayo's testimony does not provide the Court with any evidence that she was treated less favorably than others outside her protected class. Mayo has provided no evidence that specifically identifies any other individuals who received preferential treatment over her.

### 3.    Any Evidence of Derogatory Racial Comments or Jokes Does Not Show Pretext.

In support of her argument that Defined Fitness' proferred reasons are pretextual, Mayo avers that Defined Fitness' employees made derogatory racial comments and made racial jokes. Mayo contends that Defined Fitness' employees' harassing comments created a discriminatory environment. This argument does not show pretext, for three reasons.

First, "[a]lthough such comments may serve as circumstantial evidence of discrimination, the plaintiff must still show some nexus between the statements and the defendant's decision to terminate the employee." Shorter v. ICG Holdings, Inc., 188 F.3d 1204, 1209-10 (10th Cir. 1999)(internal citations omitted). Mayo has not provided the Court with evidence supporting a finding that there is a nexus between any racial comments and Defined Fitness' employment decisions related to Mayo.

Second, the record does not reveal that Defined Fitness' employees made multiple comments or made any racial jokes. In her deposition, Mayo testified that Jeff Oliveria made one comment

pertaining to Mexicans.  See Mayo Depo. at 87, lines 1-10.  The comment purportedly pertained to

hanging serapes in the gym's windows.  See id. at 87, lines 7-10.

Oliveria allegedly made this comment when the new facility located at Juan Tabo was just

opening.  See id. at 87, lines 1-3.  The Juan Tabo Gym opened in approximately August of 1999.  See

Deposition of Jeff Oliveria at 49, lines 11-16.  Aside from mention of this one incident, there is no

evidence in the record that Defined Fitness' employees made any other negative or inappropriate

comments or jokes.

Third, the singular comment allegedly made by Oliveria is no more than an isolated or stray

remark.  As the Tenth Circuit has noted, an isolated, stray remark is insufficient to demonstrate that

an employer's proffered legitimate, non-discriminatory reasons are pretextual.  See McKnight v.

Kimberly Clark Corp., 149 F.3d 1125, 1129 (10th Cir. 1998); Cone v. Longmont United Hosp.

Ass'n, 14 F.3d 526, 531 (10th Cir. 1994).  For remarks to be sufficiently probative of discriminatory

intent and evidence of pretext, Mayo must show that a decision maker made the comment and that

there was a nexus between the discriminatory statement and the decision to terminate.  See McKnight

v. Kimberly Clark Corp., 149 F.2d  at 1129(citing Cone v. Longmont United Hosp. Ass'n, 14 F.3d

at 531).

Oliveria was not involved in the decision making process related to Mayo.  See Oliveria Depo.

at 21, lines 15-21; id. at 22, lines 21-25, to p. 23, line 1; id. at 43, lines 6-8.  Mayo has not provided

evidence to the contrary.  An inappropriate comment made by a non-decision maker is not material

in showing that Defined Fitness' action was based on national origin.  See Cone v. Longmont United

Hosp. Ass'n, 14 F.3d at 531.

Mayo also has not shown that the isolated comment allegedly attributable to Oliveria has any nexus with the employment decisions regarding her.  Oliveria did not direct the comment at her.  As the Tenth Circuit stated in Cone v. Longmont United Hosp. Ass'n, even if the statement were found to be discriminatory, because the employee did not contend that the comment was directed at her, the comment was insufficient to show that age was a motivating factor in the employment decision. See id.

The allegedly discriminatory statement does not support an inference that Defined Fitness' actions related to Mayo's employment were motivated by an illegal bias.  This isolated remark, made two years before Mayo's separation from her employment, is too vague and abstract to support a claim for national origin discrimination.  See Smith v. Bd. of County Comm. of Johnson County, Kansas, 96 F. Supp. 2d 1177, 1190 (D. Kan. 2000).  Thus, the alleged comment is too ambiguous for a reasonable jury to conclude that Defined Fitness' reasons related to Mayo's employment are pretextual.  Mayo has not established a nexus to support her contention of pretext related to the alleged comment.

Finally, Mayo did not hear directly the comment to which she refers.  See Mayo Depo. at 85, lines 22-25, to p. 86, lines 1-2.  Instead, another employee, who reportedly overheard it, reported the comment to Mayo.  Mayo thus received the comment second hand.  See id. at 85, lines 7-21; id. at 86, lines 3-10.

At the summary judgment stage, "the non-moving party need not produce evidence 'in a form that would be admissible at trial,' but the content or substance of the evidence must be admissible." Thomas v. IBM, 48 F.3d 478, 485 (10th Cir. 1995)(quoting Celotex Corp. v. Catrett, 477 U.S. at 324)).  An affidavit therefore may not include hearsay testimony that would be inadmissible at trial

28

to defeat summary judgment, because a "third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill." Thomas v. IBM, 48 F.3d at 485. In clarifying this matter, the Thomas court expressed that, if the employee is testifying what an authorized agent for the employer told her, the statements would constitute an admission by a party-opponent and would therefore be admissible under rule 801(d)(2) of the Federal Rules of Evidence. See Thomas v. IBM, 48 F.3d at 485. If, however, the employee is testifying what other employees told her about what the employer's agents in turn told them, then the testimony would constitute inadmissible hearsay. See id.

### 4.      Defined Fitness' Hiring Practices Do Not Show Pretext.

Mayo argues that the only member of her protected class that Defined Fitness has hired since her termination was hired immediately after she filed her Charge of Discrimination with the EEOC. Mayo contends this fact is pretextual evidence of Defined Fitness' discrimination against her.

Mayo contends that, through discovery, she has learned that several people "almost all of whom are either male, under the age of forty, or Caucasian" took over her classes. Response at 5. Mayo refers to Defined Fitness' Answer to Plaintiff's Interrogatory No. 11, in which Defined Fitness answered the question related to the identification of individuals when it interviewed, considered, trained, offered employment, or hired in various group fitness instructor employment positions. In discussing the Answer, Mayo argues that only one of the people who replaced Mayo in instructing her water aerobics class -- Lydia Gonzales-- was in the same protected class as Mayo. Mayo points out that Defined Fitness hired Gonzales shortly after Mayo filed her Charge of Discrimination with the EEOC. Mayo contends that, in the period after she filed her Charge, Defined Fitness did not hire an Hispanic woman over the age of 40 except for Gonzales. Mayo argues that a jury could

reasonably find that Ms. Gonzales was hired as a token after Defined Fitness knew that a discrimination suit was forthcoming.

The Answer discloses a total of nine people took over Mayo's water aerobics classes following Mayo's resignation of her employment.  Those nine people were Rachel Tatum, Rachel Lovato, Dyland Marial, Michele Boran, Denise Rivera, Rhonda Madrid, Rebecca Mosely, Lydia Gonzales, and Lynda Gilkey.  Of those nine individuals, three are in the same protected class as Mayo with respect to age.  Four of the individuals who assumed Mayo's classes are in the same protected class as her in that they were of Hispanic ethnicity/national origin.  Thus, one-third of Mayo's "replacements" were over forty years and 44% were of Hispanic/Mexican ancestry.  Hence, Defined Fitness filled both Mayo's position and the other fitness instructor positions with people outside of Mayo's protected class.

Mayo also argues that Defined Fitness hired no Hispanic females over the age of forty years old after her separation from her employment.  There are several problems with this argument.  First, Mayo's argument makes reference to the gender of the individuals that Defined Fitness hired.  This case does not involve a  claim for discrimination based upon sex or gender.  Any reference, therefore, to an individual's gender is irrelevant.

Second, Mayo seeks to restrict her protected class to one group of individuals who are both Hispanic and over the age of forty.  Mayo cites no legal authority that restricts the protected class to individuals having both of these characteristics, and the Court has found none.  The better argument appears to be that the proper inquiry relates to two separate groups of individuals:  those who are within the Hispanic protected class and those who are within the over forty years old protected class. That the two claims for discrimination are found in two separate statutory provisions

30

-- one under Title VII and one under the ADEA -- supports the notion that the appropriate protected class relates to the two separate groups.

When reviewing Defined Fitness' Answer with the inquiry in mind, the evidence reveals that, after Mayo's separation from employment, Defined Fitness hired ten Hispanic individuals, totaling 42% of the new hire population for group fitness instructors through year 2002.  Further, Defined Fitness has hired seven individuals over the age of forty, totaling almost 30% of the new hire population for group fitness instructors through year 2002.  These statistics do not give rise to an inference of discrimination.

As this information reveals, Defined Fitness filled Mayo's position with people from her protected class.  Further, after her separation from employment, Defined Fitness continued to hire people in Mayo's protected class.  As a result, Mayo has not provided evidence that Defined Fitness filled her position with people outside of the protected class and has not, therefore, established that Defined Fitness has offered pretextual reasons for the employment decisions it made with respect to Mayo.

Defined Fitness has come forward with legitimate, non-discriminatory purposes for its actions. Mayo has not brought forth evidence sufficient to create a factual issue whether they were pretextual.

In conclusion, Mayo did not meet her burden of demonstrating that a genuine dispute exists as to any material fact.  There is no genuine issue whether Defined Fitness discriminated against her. Even if there were a factual issue whether Defined Fitness terminated Mayo, there is not an issue whether it terminated her for a legitimate reason; Defined Fitness had good reason to believe that Mayo was quitting.  Based upon the properly supported, undisputed material facts that Defined Fitness outlines in its briefs, and based upon the case law on the issues, Defined Fitness is entitled to

judgment as a matter of law on the federal discrimination claims. There is no need for a factfinder to hear Mayo's Title VII and ADEA discrimination claims. The Court will grant the motion for summary judgment on Counts I and V.

## II. THE COURT HAS ALREADY DENIED MAYO'S RETALIATION CLAIM IN COUNT II.

By Order dated August 27, 2003, the Court dismissed Mayo's Title VII retaliation claim in Count II because the Court lacked jurisdiction over that claim. See Memorandum Opinion and Order at 8-14 (filed August 27, 2003). Based on the Court's August 27, 3002 Order, Mayo's retaliation claim is no longer part of this action. In this motion, Defined Fitness asks the Court to enter summary judgment on the same claim. Because the Court lacks jurisdiction over this claim, and because it has already been dismissed, the Court cannot enter judgment on it. See Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974)("A court lacking jurisdiction cannot render judgment . . . ."). Accordingly, the Court denies Defined Fitness' motion for summary judgment on Count II.

## III. THE COURT WILL ENTER SUMMARY JUDGMENT IN FAVOR OF DEFINED FITNESS ON THE CLAIMS FOR BREACH OF CONTRACT IN COUNT III.

As Mayo readily concedes, New Mexico is an at-will employment state, and Mayo's employment status was at-will. See Response at 8. Mayo does not point to any evidence in the record, or create a disputed issue of fact, to support her contention that an employment contract exists.

"The general rule in New Mexico is that an employment contract is for an indefinite period and is terminable at the will of either party unless the contract is supported by consideration beyond the performance of duties and payment of wages or there is an express contractual provision stating otherwise." Hartbarger v. Frank Paxton Co., 115 N.M. 665, 668, 857 P.2d 776, 779 (1993). Either

32

party can terminate an at-will employment relationship at any time for any reason, or no reason, without liability.  See Melnick v. State Farm Mut. Auto Ins. Co., 106 N.M. 726, 730, 749 P.2d 1105, 1109, cert. denied, 488 U.S. 822 (1988).  New Mexico courts have recognized two exceptions to the general rule of at-will employment, which serve to restrict an employer's ability to terminate an employee at any time: (i) wrongful discharge in violation of public policy (retaliatory discharge); and (ii) an implied contract term that restricts the employer's power to discharge.  See Hartbarger v. Frank Paxton Co., 115 N.M. at 668, 857 P.2d at 779.

### A.  NO IMPLIED CONTRACT EXISTED TO ALTER MAYO'S AT-WILL EMPLOYMENT STATUS.

When a written personnel policy expressly reserves the right to terminate employment without notice for any reason, then that policy does not give rise to an implied employment contract.  See Garrity v. Overland Sheepskin Co., 121 N.M. 710, 714, 917 P.2d 1382, 1385 (1996).  Mayo does not dispute that the employee manual expressly states that her employment was considered to be "at-will."  Indeed, Mayo's Response admits that her employment relationship was at-will.  See Response at 8.

Despite this undisputed fact, Mayo argues that she had an employment contract that altered or restricted Defined Fitness' ability to terminate her employment.  This argument implicitly assumes that there is a contract and that Defined Fitness breached it.  Again, however, Mayo does not provide evidence to indicate the existence of such a contract provision between her and Defined Fitness.

For Mayo to survive summary judgment on a claim that the at-will doctrine has been altered, Mayo must first provide sufficient facts to support the existence of a contract.   The New Mexico courts have discussed, at some length, the possible ways in which a court could find an employment contract to exist.  "A promise, or offer, that supports an implied contract might be found in written

representations such as an employee handbook, in oral representations, in the conduct of the parties, or in a combination of representations and conduct." Hartbarger v. Frank Paxton Co., 115 N.M. at 669, 857 P.2d at 780 (citing Newberry v. Allied Stores, Inc., 108 N.M. 424, 427, 773 P.2d 1231, 1234 (1989)).  The Tenth Circuit has also recognized that, "in order to create an implied employment contract, the promise must 'be sufficiently explicit to give rise to reasonable expectations of termination for good cause only.'"  Watson v. Blankinship, 20 F.3d 383, 391 (10th Cir. 1994)(quoting Hartbarger v. Frank Paxton Co., 857 P.2d at 783)(emphasis in original). See Sanchez v. The New Mexican, 106 N.M. 76, 78, 738 P.2d 1321, 1324 (1987)("In our opinion, the evidence supports the Employer's contention that the handbook lacked specific contractual terms which might evidence the intent to form a contract. The language is of a non-promissory nature and merely a declaration of defendant's general approach to the subject matter discussed.").

While these various options are available to an employee, Mayo has not set forth facts to support the existence of a promise or of an offer that Defined Fitness made to alter the at-will relationship.  According to her testimony, Mayo was not aware of any sufficiently explicit promise that Defined Fitness made which would give her a reasonable expectation that Defined Fitness would only terminate her for good cause.  When, at her deposition, Defined Fitness' counsel asked her if she considered her at-will employment status to have been altered, Mayo answered: "I didn't thought about that, you know."  Mayo Depo. at 64, lines 2-6.

In further answer to the question why she believed the at-will doctrine was inapplicable, Mayo indicated that it is her understanding that she had to expressly agree to her employment being governed by the at-will doctrine before it was binding upon her.  See id. at 65, lines 24-25, to p. 66, lines 1-12.  In this regard, Mayo misunderstands the law regarding at-will employment.  In New

Mexico, the law initially presumes employment relationships to be at will, not the other way around, as Mayo believed.

### B.    DEFINED FITNESS' ANTI-DISCRIMINATION POLICY STATEMENT DOES NOT CREATE AN IMPLIED CONTRACT.

Mayo contends that Defined Fitness terminated her in violation of the public policy against discrimination. While Mayo can certainly bring a suit for unlawful discrimination, not all such suits can properly include a claim for breach of contract. Mayo attempts to create a breach of contract claim by arguing that a contract was formed whereby Defined Fitness could not discriminate against her on the basis of her national origin and age.

Defined Fitness' employment manual states that Defined Fitness is an equal opportunity employer and that "employment decisions are based on merit and not on race . . . national origin . . . or age." Defined Fitness Employment Manual at 10. Mayo contends that Defined Fitness treated her unfairly and terminated her because of her national origin and age. Mayo contends those actions breached the employment contract between the parties. But, as the Honorable Leslie J. Smith, Magistrate Judge, held in Rodriguez v. America Online, Inc., 183 F. Supp. 2d 1340 (D.N.M. 2001), an anti-discrimination policy contained in a personnel manual standing alone cannot give rise to an employment contract when the employer has made explicit disclaimers that the employment is at-will. See id. at 1357 (citing Garrity v. Overland Sheepskin Co., 121 N.M. 710, 917 P.2d 1382 (1996)). Judge Smith further indicated that, if an employer subjected an employee to unlawful discrimination or retaliation, the employee may obtain relief under Title VII, not pursuant to a breach of contract claim. See Rodriguez v. America Online, Inc., 183 F. Supp. 2d at 1357.

Defined Fitness has met its initial burden of showing that Mayo was an at-will employee and did not have an employment contract. Mayo has not created a factual dispute about the existence of

35

a sufficiently explicit promise to alter the at-will doctrine or otherwise shown a dispute about material facts for the breach of contract claim.  Defined Fitness is entitled to judgment as a matter of law on the breach of contract count.

**IV.    THE COURT WILL ENTER SUMMARY JUDGMENT IN FAVOR OF DEFINED FITNESS ON THE CLAIMS FOR BREACH OF AN IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ARISING OUT OF AN EMPLOYMENT CONTRACT (COUNT IV).**

As discussed above, Mayo does not contest that her employment status was at-will.  Without the existence of an employment contract, Mayo cannot survive summary judgment on her claim for a breach of the implied covenant of good faith and fair dealing.  Mayo has not shown a dispute about material facts as to her claim for breach of the implied covenant of good faith and fair dealing.

**A.    THE DOCTRINE OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING DOES NOT APPLY TO AT-WILL EMPLOYMENT RELATIONSHIPS.**

Mayo concedes that, although the covenant is implied in any contract in New Mexico, New Mexico courts typically do not recognize a cause of action for breach of the covenant of good faith and fair dealing.  See Melnick v. State Farm Mut. Auto Ins. Co., 106 N.M. 726, 731, 749 P.2d 1105, 1109 (1988).  New Mexico has refused to recognize a cause of action for breach of an implied covenant of good faith and fair dealing in at-will employment relationships.  See id. at 731, 749 P.2d at 1109 ([W]e do not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in an at-will employment relationship.").  In this case, Mayo does not dispute that her employment was at-will.  Mayo has not pointed to any disputed material facts confirming that a sufficiently explicit promise altered her at-will status and gave rise to reasonable expectations of termination for good cause only.

36

Without the existence of an employment contract, Mayo cannot survive summary judgment on her claim for a breach of an implied covenant of good faith and fair dealing. See Sanchez v. The New Mexican, 106 N.M. 76, 78, 738 P.2d 1321, 1324 (1987). In New Mexico, a cause of action for breach of the implied covenant of good faith and fair dealing is based in contract, not tort. See Salazar v. Furr's Inc., 629 F. Supp. 1403, 1410 (D.N.M. 1986)(citing Vigil v. Arzola, 102 N.M. 682, 689, 699 P.2d 613, 619 (1983)).

**B.   THERE IS NO EVIDENCE IN THE RECORD TO IDENTIFY THE TERMS OF THE ALLEGED CONTRACT.**

The inquiry in determining whether the employer has breached the implied covenant of good faith and fair dealing in an employment relationship in which the at-will status has been altered "focuses on the contract and what the parties agreed to." Bourgeous v. Horizon Healthcare Corp., 117 N.M. 434, 439, 872 P.2d 852, 857 (1994). As noted by the Supreme Court of New Mexico in Bourgeous: "The concept of the implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement." Id. at 438, 872 P.2d at 856 (citing Watson Truck & Supply Co. v. Males, 111 N.M. 57, 60, 801 P.2d 639, 642 (1990)). "Denying a party its rights to those benefits will breach the duty of good faith implicit in the contract." Bourgeous v. Horizon Healthcare Corp., 117 N.M. at 438, 872 P.2d at 856.

New Mexico, however, has refused to "apply an implied covenant of good faith and fair dealing to override express provisions addressed by the terms of an integrated, written contract." Melnick v. State Farm Mut. Auto. Ins. Co., 106 N.M. at 731, 749 P.2d at 1110. Thus, to prevail on the claim for breach of the implied covenant of good faith and fair dealing, Mayo is required to provide facts demonstrating the existence of a contract and the terms of that contract which Defined Fitness' bad faith allegedly breached. Mayo has not created any dispute about such facts and instead

37

relies upon conclusions and allegations.  Given the lack of any genuine issue of material facts detailing the terms of the contract that Defined Fitness' alleged bad faith breached, Defined Fitness is entitled to judgment as a matter of law on the count for breach of the covenant of good faith and fair dealing.

### C.     NO EXCEPTIONS HELP THIS CLAIM SURVIVE SUMMARY JUDGMENT.

Mayo's Response argues that New Mexico's courts have created exceptions that recognize a claim for breach of the implied covenant of good faith and fair dealing in the absence of an employment contract if such recognition would prevent injustice.  See Response at 9 (citing Hill v. Cray Research, Inc., 864 F. Supp. 1070, 1077-78 (D.N.M. 1991)).  The case law, including that which Mayo cites in her Response, does not support this argument.

In Hill v. Cray Research, Inc., the Honorable Juan Burciaga, Chief District Judge, noted two exceptions to the at-will doctrine that are recognized in New Mexico: "The first exception recognizes a cause of action for breach of an implied contract of employment, deriving from the parties' words and conduct or the employer's personnel policies . . . .   An additional exception to the employment at will doctrine was established in recognizing a new cause of action sounding in tort for 'retaliatory discharge' when the discharge of an employee contravenes some clear mandate of public policy."  Hill v. Cray Research, Inc., 864 F. Supp. at 1078.  Judge Burciaga was also careful to note that "the New Mexico courts have evinced no intention of abandoning the [at will] doctrine" and have made only "cautious inroads" into the doctrine with these two exceptions.  Id. at 1077.  The Hill opinion did not, therefore, suggest that this Court has a license to create additional exceptions to the at-will rule.

In her Response, Mayo also refers to Melnick v. State Farm Mut. Auto. Ins. Co. and the recent case of Kropniak v. ARA Health Servs., Inc., 131 N.M. 128, 33 P.3d 679 (Ct. App. 2001), which expounded upon Melnick, as standing for the proposition that an at-will employee can prevail

on a claim for breach of the implied covenant of good faith and fair dealing.  In <u>Kropniak</u>, the Court of Appeals acknowledged the Supreme Court's holding in <u>Melnick</u> that State Farm would have been required to show good faith or an absence of bad faith if the plaintiff had shown an "improper motivation . . . or discharge for reason contrary to public policy."  <u>Kropniak v. ARA Health Servs., Inc.</u> 131 N.M. at 130, 33 P.2d at 681.  The Court of Appeals in <u>Kropniak</u> also stated: "[W]e read <u>Melnick</u> to hold that when parties have entered into a clear and unambiguous at-will employment agreement, it is improper to invoke the implied covenant of good faith and fair dealing to vary the at-will termination provision in the written agreement."  <u>Kropniak</u>, 131, 33 P.3d at 682.  The <u>Kropniak</u> court went on to state:

> [W]e cannot agree with Plaintiff that the *Melnick* Court invites us to extend the implied covenant of good faith and fair dealing to cover bad faith conduct of improper motivation, overreaching, or discharge for a reason contrary to a clear mandate of public policy.  Consistent with the reasoning of *Melnick*, when the termination is based on an express, unambiguous, and clear at-will termination right, such conduct is only actionable to the extent it constitutes the tort of retaliatory discharge[.]  .

<u>Id.</u> at 132, 33 P.2d at 683.  The holdings of <u>Melnick</u> and <u>Kropniak</u>, therefore, stand for the proposition that an at-will employee cannot prevail on a claim for breach of the implied covenant of good faith and fair dealing.  Mayo's reliance on either case for the proposition that her claim for a breach of the covenant of good faith and fair dealing is appropriate is misplaced.

Hence, in this case, even if Mayo has shown that her termination was for a reason contrary to public policy, the recent New Mexico cases do not suggest that application of the <u>Melnick</u> rule would cause an injustice. The court does not have to decide whether the public policy against age and national origin discrimination is so strong that this Court should create another exception to the rule in <u>Melnick</u>, which did not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in a at-will employment exception.  In light of the undisputed fact that Mayo's

employment was at-will and in light of the New Mexico case law on this issue, Defined Fitness is entitled to summary judgment on the claim for breach of the implied covenant of good faith and fair dealing set forth in Count IV of the Complaint.

## V. THE COURT WILL ENTER SUMMARY JUDGMENT IN FAVOR OF DEFINED FITNESS ON THE CLAIM FOR WRONGFUL TERMINATION (COUNT VI).

### A. MAYO DID NOT RESPOND TO DEFINED FITNESS' MOTION ON HER CLAIM FOR WRONGFUL (RETALIATORY) DISCHARGE.

Mayo's Response does not contain any argument in support of her claim for wrongful (retaliatory) discharge. "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Setliff v. Memorial Hosp. of Sheridan County, 850 F.2d 1384, 1393 (10th Cir. 1988).  By not providing any argument, affidavits, or other evidence related to this claim, Mayo failed to satisfy her burden.

Pursuant to local rules 56.1 and 7.1, Mayo waived her right to controvert the facts and arguments related to this claim.  See D.N.M. LR-Civ. 56.1; id. 7.1.  As a result of Mayo's failure to argue and demonstrate the existence of any dispute of material fact on this claim, the Court will enter summary judgment on this claim in favor of Defined Fitness.

### B. MAYO DOES NOT HAVE A CAUSE OF ACTION FOR WRONGFUL TERMINATION.

New Mexico recognizes a cause of action for wrongful termination. See Vigil v. Arzola, 102 N.M. 682, 688, 699 P.2d 613, 619 (Ct. App. 1983), rev'd in part on other grounds, 101 N.M. 687, 687 P.2d 1038 (1984).  New Mexico courts created the tort of wrongful discharge "as a means of redress for the very limited situation in which an employee has no other means of protection against

an employer's breach of public policy.  If the employee already has some protection, either because of an employment contract or through another cause of action, the tort is unnecessary and will not be recognized."  Salazar v. Furr's, Inc., 629 F. Supp. 1403, 1409 (1986) (Campos, J.).

> Under Vigil a party must demonstrate that she was discharged from her employment because she performed an act that public policy has authorized or would encourage or because she refused to do something required of her by the employer that public policy would condemn.  [Vigil v. Arzola, 102 N.M. ] at 689, 699 P.2d 613.  Plaintiff must further demonstrate a sufficient nexus between the asserted public policy and the discharge.  Id.

Salazar v. Furr's, Inc., 629 F. Supp. at 1408.

This tort is limited.  In Salazar v. Furr's Inc., the Honorable Santiago E. Campos, District Judge, declined to allow the plaintiff to bring her wrongful discharge claim because the claim was identical to her Title VII claim based upon sex.  See 629 F. Supp. at 1408.  This Court stated that, because "the public policies that may have been violated . . . can be vindicated under the federal legislation, and perhaps under the New Mexico Human Rights Act as well, the Court finds that the tort of wrongful discharge will not lie."  Id.  The Court continued by stating that, "[w]here a remedy other than this tort is available to Plaintiff to redress the discharge, the policy which underlies New Mexico's recognition of the tort, that of softening the terminable at will rule, does not favor recognizing a cause of action."  Id.

Moreover, "[t]his Court . . . has repeatedly refused to recognize a claim for retaliatory discharge where other remedies are available to vindicate the alleged public policy violation.  Specifically, we have refused to recognize an employer's alleged Title VII violation as a basis for this tort."  McDonald v. Corrections Corp. of Am., 181 F. Supp. 2d 1274, 1282-83 (D.N.M. 2002)(Baldock, J., Circuit Judge sitting by designation).

41

Mayo does not dispute that her claim for wrongful termination is identical to and indistinguishable from her Title VII claims alleging retaliation. In this case, Mayo has other, identical remedies available to her under Title VII that preclude her from bringing a cause of action based upon the tort of wrongful discharge. Defined Fitness, therefore, is entitled to judgment as a matter of law on this claim.

### C.   MAYO'S WRONGFUL DISCHARGE CLAIM DOES NOT SURVIVE SUMMARY JUDGMENT.

To survive summary judgment on the claim for retaliatory discharge, Mayo must present evidence of facts supporting her contention that Defined Fitness discharged her because she "performed an act that public policy has authorized or would encourage, or because she refused to do something that Defined Fitness required of her that public policy would condemn." Salazar v. Furr's, Inc., 629 F. Supp. at 1408 (citing Vigil v. Arzala, 102 N.M. 682, 689, 699 P.2d 613, 619 (1983)). In support of this claim, Mayo contends that she engaged in the following acts which public policy allegedly encourages: (1) complaining with respect to an alleged theft incident; and (ii) opposing Defined Fitness' discriminatory practices against Winona Sanchez.

### 1.   There is no Specific Expression of Public Policy Authorizing or Encouraging the Reporting of an Alleged Theft.

In support of her claim, Mayo alleges that Defined Fitness that Defined Fitness retaliated against her because she reported to management that she was the victim of a theft at Defined Fitness. Mayo's report of this alleged theft does not rise to the level of engaging in an act that public policy protects. "The claim for retaliatory discharge requires an employee to show that he was discharged because he performed an act that public policy authorizes or encourages." Weidler v. Big J.

42

*Enterprises*, 124 N.M. 591, 597, 953 P.2d 1089, 1095 (Ct. App. 1997)(citing <u>Chavez v. Manville</u>

<u>Prods. Corp.</u>, 108 N.M. 643, 647, 777 P.2d 371, 375 (1989)).

As a result, "the linchpin of a cause of action for retaliatory discharge is whether by

discharging the complaining employee the employer violated a 'clear mandate of public policy.'"

<u>Weidler v. Big J. Enterprises</u>, 124 N.M. at 597, 953 P.2d at1095 (quoting <u>Shovelin v. Central N.M.</u>

<u>Elec. Coop.</u>, 115 N.M. 293, 303, 850 P.2d 996, 1006 (1993)).  "One source we look to for

statements of public policy is legislation." <u>Weidler v. Big J. Enterprises</u>, 124 N.M. at 597, 953 P.2d

at1095.  Mayo provided no evidence to the Court of a public policy in New Mexico authorizing or

encouraging her to report an alleged theft, nor has the Court found a basis for such a public policy

in New Mexico.

### 2.      There is no Evidence in the Record that Defined Fitness was Aware of Mayo Engaging in Protected Activity.

In addition to providing evidence that Mayo engaged in an act that public policy protects, the

tort of wrongful discharge also requires Mayo to show that a casual connection exists between her

termination and her protected activity.  <u>See</u> <u>Lihosit v. I & W, Inc.</u>, 121 N.M. 455, 457, 913 P.2d 262,

264 (Ct. App. 1996).  As the Court of Appeals stated in <u>Lihosit</u>, "an employee fails to prove the

causal connection necessary to sustain a claim for retaliatory discharge when there is no evidence that

the persons responsible for his discharge had any knowledge the employee engaged in an activity

alleged to be protected."  <u>Id</u>. at 459, 913 P.2d at 266.

In a case in which the employee alleged her employer fired her because she refused to commit

perjury, the Tenth Circuit stated:  "[A]n essential element of plaintiff's wrongful discharge claim was

that plaintiff refused to commit perjury <u>and</u> defendant knew of such refusal."  <u>White v. American</u>

<u>Airlines, Inc.</u>, 915 F.2d 1414, 1422 (10th Cir. 1990)(emphasis added).  To survive summary

judgment, Mayo must present evidence that Defined Fitness was aware, either by suspicion or actual

knowledge, of the protected activity.  See Weidler v. Big J. Enterprises, 124 N.M. at 599, 953 P.2d

at 1097.  The statements that Mayo made to Patty Poindexter, the Group Fitness Director, regarding

any treatment Winona Sanchez received for being late are insufficient to establish that Defined Fitness

was aware that Mayo was engaging in protected activity.

      **IT IS ORDERED** that the Defendant's Motion for Summary Judgment is granted in part and

denied in part; judgment is entered for the Defendant, Fowler Fitness, Inc., (d/b/a Defined Fitness)

and against Plaintiff, Herlinda C. Mayo on Counts I, III, IV, V, and VI; and judgment is denied on

Count II, which the Court has already dismissed.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Sam Bregman
THE BREGMAN LAW FIRM, P.C.
Albuquerque, New Mexico
*Attorney for the Plaintiff*

Bryan T. Fox
WOLF & FOX, P.C.
Albuquerque, New Mexico
*Attorney for the Defendant*