## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

HERLINDA MAYO,

       Plaintiff,

vs.                                 No. CIV 02-0222
JB/RLP

FOWLER FITNESS, INC., d/b/a Defined
Fitness,

       Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion for Attorney's Fees and Costs, filed November 7, 2003 (Doc. 102). The primary issue is whether the Plaintiff Herlinda Mayo continued to litigate this case after a point where it became clear that her claim lacked merit. Because the Court finds that Mayo continued to litigate this case after it was apparent her claims lacked merit, the Court will grant this motion in part and award fees in favor of the Defendant. The Court will deny the motion insofar as it requests fees related to claims based in state law, or which the Court did not determine on their merits.

### BACKGROUND

On February 25, 2002, Mayo commenced this litigation by filing her Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 (Doc. 1), alleging, among other things, that Defendant Fowler Fitness, Inc., d/b/a Defined Fitness ("Defined Fitness") and several individual defendants unlawfully discriminated against her. Defined Fitness protected its interests by hiring counsel to respond to and defend against the allegations set forth in the Complaint. As a result of Mayo's filing of the original

Complaint, Defined Fitness filed a Motion to Dismiss (Doc. 6) and a Memorandum Brief in Support of Defendant's Motion to Dismiss (Doc. 7).

On May 17, 2002, Mayo filed her First Amended Complaint for Damages and Jury Demand (Doc. 18), alleging, among other things, that Defined Fitness unlawfully discriminated against her. The First Amended Complaint alleged six counts of unlawful acts that Defined Fitness perpetrated against Mayo, including: (i) Title VII National Origin Discrimination; (ii) Title VII Retaliation for Statutorily Protected Conduct; (iii) Breach of Contract; (iv) Breach of Implied Covenant of Good Faith and Fair Dealing; (v) Age Discrimination in Violation of the ADEA; and (vi) Wrongful Termination. On May 30, 2003, Defined Fitness filed its Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 70).

The Court filed a Memorandum Opinion and Order on August 27, 2003 (Doc. 90)("MOO 1"), granting Defined Fitness' motion and dismissing Mayo's retaliation claim for failing to exhaust her administrative remedies. The Court also dismissed all claims for alleged discrimination based upon the Group Fitness Director Position as being time barred.

On May 30, 2003, Defined Fitness filed its Motion for Summary Judgment (Doc. 72). The Court issued its Memorandum Opinion and Order on October 8, 2003 (Doc 99)("MOO 2"), granting the motion for summary judgment and disposing of all other remaining counts of Mayo's Complaint. The Court issued its Final Judgment on October 8, 2003 (Doc. 100), which dismissed the entire case with prejudice.

Defined Fitness moves pursuant to 42 U.S.C. § 2000-5, rule 54 of the Federal Rules of Civil Procedure, and local rule 54, see D.N.M. LR-Civ. 54, and asks this Court to award it attorney's fees against Mayo. According to the Affidavit of Bryan T. Fox, all attorney's fees that Defined Fitness

incurred were reasonably necessary.  See Affidavit of Bryan T. Fox, Esq. ¶ 3, at 1 (executed November 7, 2003).  Defined Fitness has incurred attorney's fees in the amount of $95,889.50 in defending this action.  Defined Fitness has incurred costs in the amount of $567.13, which it contends were reasonably necessary in defending this action.

In support of this motion, Defined Fitness offers evidence that, at least by September 2003, Mayo's attorney, Sam Bregman, informed her that her case was meritless and if Mayo pursued the case further she risked having to pay the Defendant's attorney's fees.  See E-mail message from Mayo to Bregman dated September 12, 2003 ("You call my husband and me for a meeting and you state 'we have to Seattle this thing now, I want the rights to do it now.  You are going to lose and you will have to paid thousand of dlls. to defendant, how will you feel.  You were also aggressively strong tone of voice addressing this issue and said my case was merit less and I was going to lose.").  See also E-mail message from Mayo to Bregman, dated September 18, 2003 ("This is what you were preaching all this time regarding my case.  'You are going to lose Ms. Mayo' sure enough I did lose thanks to  you even the Judge point not receiving enough evidence to support my case from you my DEFENDANT."); E-mail message from Mayo to Bregman, dated September 9, 2003 ("I will be very happy and proud of myself even if I will have to paid some expenses to defendants."); E-mail message from Mayo to Bregman, dated September 1, 2003 ("You know what, if I lose is OK I think my husband is coming into terms that is more than money what really matters here."); E-mail message from Mayo to Bregman, dated September 4, 2003 ("[Y]ou said I need to sattle and give you my rights to sattle 'pronto'.  As I stated before in my recent email no sattlement until PreTrail.")

## LEGAL ANALYSIS

The Supreme Court of the United States has found a prevailing party to be a "'party in whose

favor a judgment is rendered, regardless of the damages awarded[.]'" <u>Buckhannon Bd. and Care Home, Inc. v. West Virginia Department of Health and Human Resources</u>, 532 U.S. 598, 603 (2001)(quoting Black's Law Dictionary 1145 (7th ed.1999)).  Because the Court has disposed of all of Mayo's claims in Defined Fitness' favor, Defined Fitness is the prevailing party.  "The law is well settled the district judge retains jurisdiction over the issue of attorney's fees even though an appeal on the merits of the case is pending." <u>City of Chante, Kansas v. Williams Natural Gas Co.</u>, 955 F.2d 641, 658 (10th Cir. 1992), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u>, <u>Systemcare Inc. v. Wang Lab Corp.</u>, 117 F.3d 1137 (10th Cir. 1997).[1]

Defined Fitness contends that all six counts of Mayo's First Amended Complaint for Damages and Jury Demand were frivolous, unreasonable, and without foundation.  Defined Fitness argues that the Court should require Mayo to reimburse it for its reasonable attorney's fees and costs incurred in the litigation of this action.

## I.    STANDARD UNDER 42 U.S.C. § 2000e-5 FOR AN AWARD OF ATTORNEY'S FEES.

Pursuant to 42 U.S.C. § 2000e-5, an award of attorney's fees is appropriate to the prevailing party in Title VII litigation:

> In any action or proceeding under this subsection, the court, in its discretion may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 2000e-5k.  The statute commits an award of attorney's fees to a defendant to the trial

_____

[1] Mayo filed Notices of Appeal on September 26, 2003 and on March 16, 2004.  <u>See</u> Notice of Appeal, filed September 26, 2004 (Doc. 98); Notice of Appeal, filed March 16, 2004 (Doc. 129). The United States Court of Appeals for the Tenth Circuit issued an Order dismissing the March 16, 2004 Notice of Appeal on March 30, 2004.  <u>See</u> Copy of Order, filed April 2, 2004 (Doc. 133).

court's discretion.  See Carter v. Sedgwick County, 929 F.2d 1501, 1506 (10th Cir. 1991)("We review the district court's award of attorney's fees under an abuse of discretion standard.").

In Christiansburg Garment Co. v. EEOC, 434 U.S. 412 (1978), the Supreme Court of the United States considered whether the standard for awarding fees to a prevailing Defendant under 42 U.S.C. § 2000e-5 should differ from the standard for awarding fees to a prevailing plaintiff.  The Supreme Court determined that a prevailing defendant is entitled to its attorney's fees where it establishes "that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."  Christiansburg Garment Co. v. EEOC, 434 U.S. at 421.  The plaintiff's obligation to avoid frivolous litigation is a continuing one.  See id. at 422.  Thus, advocacy of a claim after it is clearly no longer tenable may subject the plaintiff to attorney's fees even though the complaint was not initially frivolous.  See id.

In subsequently interpreting and applying the Christianburg standard, the Tenth Circuit said: "In order to penalize the plaintiff with attorneys' fees, we must be persuaded that the record is devoid of any evidence of discrimination."  Montgomery v. Yellow Freight Sys., Inc., 671 F.2d 412, 413 (10th Cir. 1982).  Subsequent Tenth Circuit cases have made the standard even more rigorous than that set forth in Montgomery.  In an unpublished opinion, the Tenth Circuit stated: "The standard in Christianburg Garment is met when a party utterly fails to produce *any* evidence in support of material issues necessary to withstand summary judgment."  Twilley v. Integris Baptist Med. Ctr., Inc., 16 Fed. Appx. 923 (10th Cir. 2001)(emphasis in original)(citing Head v. Medford, 62 F.3d 351, 355 (11th Cir. 1995); Smith v. Smythe-Cramer Co., 754 F.2d 180, 183 (6th Cir. 1985)("Courts have awarded attorneys fees to prevailing defendants where no evidence supports the plaintiff's position or the defects in the suit are of such a magnitude that the plaintiff's ultimate failure is clearly apparent

from the beginning or at some significant point in the proceedings after which the plaintiff continues to litigate.")).  See Crabtree v. Muchmore, 904 F.2d 1475, 1478 (10th Cir. 1990)(advising district courts to look to the merits of a complaint dismissed under rule 12(b)(6) to determine frivolousness).

The Tenth Circuit has indicated that it is not enough that a court dismisses claims on a dispositive motion for a defendant to recover attorney's fees from a plaintiff.  See Jane L. v. Bangerter, 61 F.3d 1505, 1513 (10th Cir. 1995)(citing Hughes v. Rowe, 449 U.S. 5, 15-16 (1980)).  As the Tenth Circuit indicated in Jane L.: "Those claims dismissed on 12(b)(6) motions that receive 'careful consideration,' especially as evidenced by lengthy, detailed, and reasoned orders or opinions, are not 'groundless' or 'without foundation.'"  61 F.3d at 1513.  Despite this language from the Tenth Circuit, Defined Fitness urges the Court not to interpret Jane L. as implying that, if the district court issues a detailed and reasoned order on a dispositive motion, the district court should not impose attorney's fees against a plaintiff.

Defined Fitness argues that the Court's focus should be placed on the "considerable consideration" requirement.  Defined Fitness contends that the astute and attentive trier of fact could enter a detailed and reasoned order even when the claims are groundless or without foundation.  Defined Fitness maintains that the Court should place its emphasis on the amount of consideration that it gave.  When a plaintiff does not present a legitimate and well-reasoned argument, does not support her argument with relevant case law, and does not substantiate her claims with admissible evidence or facts, the judge can make a ruling without necessarily "carefully" considering the matters, even though a detailed and lengthy opinion may be issued.

In discussing the careful consideration of claims made by the underlying trial court therein, the Tenth Circuit discussed how the trial court gave the plaintiff's arguments more than a cursory

review.  See Jane L. v. Bangerter, 61 F.3d at 1514.  As the court explained: "If these alternative theories were truly frivolous, the district court would have had no need to engage in prolonged and fact specific inquiries."  Id. (citing Hughes v. Rowe, 449 U.S. at 15-16).  Further, the discussion in Jane L. focused on the fact that the plaintiff was bringing novel claims and theories  that the United States Supreme Court had not squarely rejected.  See Jane L. v. Bangerter, 61 F.3d at 1514.  As such, the Tenth Circuit reasoned that a legal argument is not frivolous simply because the Supreme Court has failed to affirmatively address it.  Id. at 1514.  Because the well-reasoned, novel arguments required careful consideration of the trial court, the Tenth Circuit in Jane L. found that it was improper to require the plaintiff to pay for the defendant's attorney's fees.

Courts considering the issue of awarding attorney's fees to a prevailing defendant have identified three general factors which should guide the Christianburg inquiry whether an award of attorney's fees to a defendant is appropriate: (i) whether the plaintiff established a prima facie case; (ii) whether the defendant offered to settle; and (iii) whether the action was decided on dispositive motions rather than at a trial on the merits.  See Hughes v. Regents of the University of Colorado, 967 F. Supp. 431, 440 (D. Colo. 1996)(citing Walker v. NationsBank, 53 F.3d 1548, 1558 (11th Cir. 1995)).

## II.   THE COURT WILL AWARD FEES RELATED TO MAYO'S FEDERAL CLAIMS WHICH THE COURT DETERMINED ON THEIR MERITS.

Regardless of the Court's thoughts about the American Rule and of deviations from it, the Court is not free to disregard Congress' directive.  For all the Court knows, in the give and take of the legislative process, there would not have been a Title VII without this fee-shifting provision.  The Court is not at liberty to enforce some provisions and to fail to enforce others.  Thus, where asked,

as here, to shift fees and costs to the plaintiff, the Court must do its best to apply faithfully Congress'

intent and the Tenth Circuit's precedents.

> **A.**  **THE COURT WILL AWARD ATTORNEY FEES AND COSTS RELATED TO MAYO'S DISCRIMINATION CLAIMS IN COUNTS I AND V OF THE COMPLAINT WHICH WERE WITHOUT BASIS IN FACT AND WERE DISMISSED WITH PREJUDICE ON THE MERITS.**

This Court dismissed Count I of Mayo's Complaint, which alleged that Defined Fitness

discriminated against her because of her National Origin, and Count V, alleging age discrimination,

with prejudice.  See MOO 2 at 31-32.  The specifics of Mayo's Complaint related to Counts I and

V centered around allegations that Defined Fitness wrongfully failed to promote Mayo to various

employment positions,[2] that Defined Fitness unlawfully denied Mayo a transfer to another facility, and

that Defined Fitness wrongfully terminated Mayo.  The Court found that Mayo did not establish a

prima facie case of discrimination on any of these alleged adverse actions.

At the time of filing her Complaint, Mayo was aware of the employment opportunities and

benefits provided by each employment position she alleges she was unlawfully denied.  Specifically,

Mayo was aware that each of the alleged promotional opportunities constituted no more than lateral

transfers because they did not provide any different rate of pay, hours, prestige, responsibilities,

rights, or entitlements from the position that Mayo held at Defined Fitness.  Likewise, the transfer

---

[2] Mayo alleged, in addition to other positions, Defined Fitness discriminated against her by failing to promote her to the Group Fitness Director position.  The Court dismissed this allegation for her failure to timely file this claim.  See MOO 1 at 19.  In that opinion, the Court specifically noted it is undisputed that Defined Fitness "offered Mayo an interview [for the Group Fitness Director position] during the interview period, but she rejected the opportunity."  Id. at 16.  The Court's ruling notes "Mayo's Response is silent on [the Group Fitness Director position issue].  Mayo puts forth no argument, legal authority, supporting evidence, affidavits, or other documents to contest Defined Fitness' contention on this issue."  Id. at 15.

to another facility would not have had any impact in these areas.  Further, at all times throughout the course of this litigation, Mayo was aware that Defined Fitness had eliminated the position of swimming instructor before the time Mayo sought the position.

Mayo also sought relief for the alleged denial of a position as a water aerobics instructor. This claim was without merit because this was the position that Mayo held throughout the entire course of her employment with Defined Fitness.  With regard to the position of land personal trainer, at all times throughout this litigation, Mayo was aware that the land personal trainer position was not a promotion because the rate of pay for the position was substantially lower than the rate of pay she was receiving as a water aerobics instructor.  Throughout the course of this litigation, Mayo did not attempt to demonstrate that she was qualified for any of the positions she sought or that she actually applied for them.  The Court found, therefore, that Mayo did not suffer any adverse employment action with respect to these various employment positions and her alleged request to transfer to another facility.  See id. at 14 ("Mayo does not provide any evidence or argument to controvert the fact that Mayo has not suffered any adverse employment action, including, but not limited to, the denial of various other employment positions and the denial of a transfer to another facility.").

With respect to her claim that she was unlawfully terminated, the record showed that Mayo voluntarily resigned, though she may not have intended to do so.  See id. at 20-21 ("These statements indicate that, at the time, Mayo may not have wanted to resign but did, in fact, believe that she was doing so.").  Despite her resignation, Mayo then knowingly sought compensation for discriminatory discharge.

Defined Fitness properly responded to Mayo's allegations by demonstrating legitimate non-discriminatory reasons for all business decisions it undertook related to Mayo's employment.  Mayo

was then unable to demonstrate pretext because no evidence of discrimination apparently existed. See id. at 23 ("The record does not reveal any evidence to controvert the undisputed facts that Defined Fitness discontinued the swimming position; that no land personnel trainer positions were available; and that Mayo never officially applied for any of the positions that she sought.").

Mayo's argument that Defined Fitness' actions were pretextual relate to one comment allegedly made in 1999. The Court found that there was no "nexus" between the alleged comment and any adverse action taken against Mayo. See id. at 26. The alleged comment, if true, was an isolated or stray remark, insufficient to demonstrate pretext. See id. at 27. Additionally, the statement does not "support an inference that Defined Fitness' actions related to Mayo's employment were motivated by any illegal bias." Id. at 28. Finally, Mayo failed to provide any admissible evidence that the statement was made. Id. at 28-29.

Mayo also argued that Defined Fitness' hiring practices after her resignation demonstrated pretext in its actions against her. The undisputed facts are that 42% of Defined Fitness' new hires after Mayo's resignation were Hispanic. Similarly, 30% of the new hires were over the age of 40. The Court found "[t]hese statistics do not give rise to an inference of discrimination." Id. at 31. Defined Fitness provided Mayo with these statistics during discovery.

Mayo's actions meet the Christianburg standard for an award of attorney's fees to Defined Fitness. While the Court's Memorandum Opinion and Order granting summary judgment was thorough, the length was the product of the Court taking time to show how many problems there were with Mayo's case. Mayo presented many theories and complained about many positions. The Court dealt with them all. In the end, however, Mayo did not provide any evidence that Defined Fitness took discriminatory action against her. She voluntarily resigned her position, then sued for

-10-

wrongful discharge.  She alleges that she was denied several promotional opportunities, yet she knew the positions were only lateral transfers, the positions were not open, and she did not apply for them. Mayo also alleged that Defined Fitness' hiring practices show discrimination when the facts of this case did not reasonably support such a position.  Even if Mayo truly believed her claims were meritorious at the outset of this litigation, she should have abandoned them after she became aware that the claims were without merit.  The Court finds, therefore, that by September 2003, when Mayo's own attorney informed her that her claims lacked merit, Mayo should have abandoned these claims.  She had offers to settle and did not, apparently becoming intent on pursuing her claims despite her counsel's warnings.  This appears to be the situation with which Congress was concerned.

The Court believes this result is consistent with the language in <u>Jane L.</u> about careful consideration.  First of all, unlike <u>Jane L.</u>, the Court her was not deciding a rule 12(b)(6) motion, but a motion for summary judgment.  An opinion looking at affidavits and documents is, in may cases, going to have more length than one that only reviews the allegations of the complaint.  In any case, the fact section of the Court's opinion only went from pages 4 to 8, and the facts were largely undisputed.  And unlike in <u>Jane L.</u>, the Court did not have "to engage in prolonged and fact specific inquiries."  <u>Jane L. v. Bangerter</u>, 61 F.3d at 1514. What the facts showed was that Mayo's claims lacked any evidence to support material issues.

What caused the length in the Court's opinion was not a wrestling with the facts, but the Court's decision to address all grounds rather than resting its decision on narrow grounds.  For example, the Court pointed out that Mayo did not provide any argument regarding the alleged denial of the various positions; the Court could have stopped there, but went ahead to find  that Mayo had

not established a prima facie case.  The Court noted that she had not met her prima facie burden to establish discriminatory failure to promote by looking at each of the five positions and showing that promotional opportunities did not exist because the positions that she sought constituted lateral transfers, that she was not qualified for other positions she sought, and the remaining positions were already filled.  The Court could have treated the argument as abandoned, and the length of the Court's opinion was not a result of having to carefully consider the facts, but of dealing with all possible arguments.

On summary judgment, Jane L. does not indicate that the length of the District Court's opinion is determinative.  Rather, Montgomery and Twilley suggest the key inquiry is whether the plaintiff fails to produce any evidence in support of material issues necessary to withstand summary judgment.  When Mayo received Defined Fitness' motion for summary judgment, she should have realized what her attorney realized, i.e., that her claims did not have merit.  At that stage, she should not have continued with her suit.  The Court will award fees on Counts I and V.

**B.     THE COURT WILL NOT AWARD FEES FOR MAYO'S RETALIATION CLAIM IN COUNT II.**

Count II of Mayo's Complaint alleges that Defined Fitness retaliated against Mayo for objecting to discrimination against a minority employee.  The Court dismissed this claim based on Defined Fitness' Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed May 30, 2003 (Doc. 70).  See MOO 1 at 14.  The Court determined that it did not have jurisdiction over her claim for retaliation because she had failed to exhaust her administrative remedies with regard to that claim. Id.  ("It follows from these undisputed facts that the Court lacks jurisdiction over Mayo's newly asserted retaliation claims.  Those claims are not reasonably related  to her exhausted EEOC claims.

There is no evidence supporting any inference that Mayo's retaliation charge was omitted through the EEOC's error or negligence.  Mayo has not met her burden for establishing that this Court has jurisdiction over the retaliation claim.").

The Court determined that Mayo had not exhausted administrative remedies with regard to her retaliation claim because she had not, in her EEOC Charge of Discrimination, listed retaliation as a basis for her charge.  Specifically, Mayo could have checked the box labeled retaliation or discussed retaliation in the narrative portion of the Charge and she did neither.  Further, Mayo's EEOC Affidavit also does not contain a reference or reasonable inference that her claim included a charge of retaliation.  The law is clear on this point -- that the EEOC Charge must include the claim asserted or the claim must be reasonably related to those charges actually made in the EEOC Charge. See id. at 8-10.  The law is also clear that a charge of retaliation is not automatically reasonably related to a charge of discrimination.  See id. at 11-14.

Because the Court finds that Mayo should have been aware that her claims lacked merit in September 2003, and the Court dismissed her retaliation claim in August 2003 without reaching the merits of that claim, the Court will not award fees related to Count II.

## C.   THE COURT WILL NOT AWARD FEES BASED ON MAYO'S BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CLAIMS SET FORTH IN COUNTS III AND IV.

Mayo alleged in Count III that Defined Fitness breached its contract with her.  However, "Mayo does not point to any evidence in the record, or create a disputed issue of fact, to support her contention that an employment contract exists."  MOO 2 at 32.  In fact, during her deposition and in her Response to Defendant's Motion for Summary Judgment, filed June 25, 2003 (Doc. 79), Mayo

-13-

admitted that her employment relationship was terminable at-will.  <u>Id.</u> at 33.  "According to her

testimony, Mayo was not aware of any sufficiently explicit promise that Defined Fitness made which

would give her a reasonable expectation that Defined Fitness would only terminate her for good

cause."  <u>Id.</u> at 34. Despite this fact, Mayo continued to pursue the breach of contract claim against

Defined Fitness.

Count IV alleged a claim for breach of the covenant of good faith and fair dealing.  The Court

dismissed this claim because there was no contractual basis for it.  "Without the existence of an

employment contract, Mayo cannot survive summary judgment on her claim for a breach of an

implied covenant of good faith and fair dealing."  <u>Id.</u> at 37.

Both Count III and Count IV were dependant on the existence of an employment contract

that Mayo conceded never existed.  The Court thus granted summary judgment in favor of Defined

Fitness on the merits of both of these claims.  At the hearing on this motion regarding fees, however,

Defined Fitness acknowledged that the New Mexico state courts have indicated a higher standard for

the award of attorney's fees to prevailing defendants than that standard the Tenth Circuit has used,

namely that the New Mexico courts require a showing of bad faith.  <u>See</u> Transcript of Hearing at 8,

10-12 (February 26, 2004)[3]; <u>State of New Mexico ex rel. N.M. State Highway & Transp. Dep't v.</u>

<u>Baca</u>, 120 N.M. 1, 4, 896 P.2d 1148, 1151 (1995)(adopting bad faith exception to American Rule).

Defined Fitness asserted that it would be impracticable to attempt to separate the fees incurred in this

case into those incurred based on state claims and those based on federal claims.  <u>See id.</u>  Defined

Fitness further contended that the "vast majority" of its efforts were expended on work related to the

_____

[3] The Court's citations to the transcript of the hearing refer  to the Court Reporter's original,
unedited version.  Any finalized transcript may contain slightly different page and/or line numbers.

federal discrimination claims.  See id.  Because the Court believes the New Mexico standard for

awarding attorney's fees in a case such as this requires a more stringent showing, and because the

Court feels it can reduce the amount of fees that is proper to award based on the fact that some of

the claims were state law claims, the Court will deny the motion as to the state law claims for breach

of contract and breach of the implied covenant of good faith and fair dealing.

### D.   THE COURT WILL NOT AWARD FEES FOR MAYO'S WRONGFUL TERMINATION CLAIMS ALLEGED IN COUNT VI.

Count VI of Mayo's Complaint alleged wrongful termination.  This Court disposed of this

claim by noting that Mayo made no attempt to make an argument as to the legitimacy of this claim

in her Response to the Motion for Summary Judgment.  See MOO 2 at 40.  The Court also noted that

the claim was identical to her Title VII claim and, therefore, was barred under state law.  See id. at

42.  "Mayo does not dispute that her claim for wrongful termination is identical to and

indistinguishable from her Title VII claims alleging retaliation."  Id. at 42.  New Mexico does not

recognize a claim for wrongful termination where a nearly identical cause already exists.  See id. at

41.

Mayo voluntarily resigned; she was not terminated.  Mayo cannot bring a wrongful

termination claim without having been terminated.  This point should have been clear to Mayo, if not

from the outset, then certainly from the point of the summary judgment briefing and after her

deposition.  As with the other state claims, however, the Court does not believe an award of fees

attributable to the wrongful termination claim is appropriate.

### III.   THE COURT WILL REDUCE THE AMOUNT OF FEES THAT DEFINED FITNESS SEEKS.

Based on the three factors identified by the United States District Court for the District of

Colorado in <u>Hughes v. Regents of the University of Colorado</u>, the Court finds it appropriate to award fees to Defined Fitness.  Each of the three factors counsels in favor of awarding fees: (i) Mayo failed to establish a prima facie case on any of her claims; (ii) Defined Fitness offered to settle the case and, not only did Mayo decline, she apparently went against counsel's advice in doing so; and (iii) the Court decided this action on a dispositive motion rather than at a trial on the merits.  In fact, Defined Fitness apparently made many offers to settle this matter -- at the outset of the case; at the settlement conference before the Honorable Richard Puglisi on March 10, 2003; and on March 21, 2003.  Mayo refused to reduce her settlement offer of $1,2000,000.00 and, thus, refused to settle this case even when her own counsel repeatedly urged her to accept the settlement offer.

It is important to reiterate that not every case that is disposed of by granting summary judgment in favor of the defendant is appropriate for an award of attorney's fees.  See <u>Jane L. v. Bangerter</u>, 61 F.3d at 1513 (holding that it is not enough that a court dismisses claims on a dispositive motion for a defendant to recover attorney's fees from a plaintiff).  This case, however, falls into the category of cases where such an award is appropriate.  As noted above, Mayo not only did not create a genuine issue of material fact on the issues in this case, she did not refute the vast majority of Defined Fitness' arguments.  She not only offered no evidence to support her allegations, but was forced to concede many points that undermined and defeated her own claims.

By the time the parties completed briefing on the motion for summary judgment, July 9, 2003, it should have been apparent to Mayo that her claims lacked merit.  In fact, in that time frame, it did become apparent to Mayo's attorney that her claims were without merit and that she was destined to lose this case.  Because Mayo continued to pursue these claims even after it was apparent that they lacked merit, the Court will award Defined Fitness appropriate attorney's fees.

-16-

Defined Fitness represents that it has incurred attorney's fees in the amount of $95,889.50 and costs in the amount of $556.13 in defending this action. <u>See</u> Fox Aff. ¶¶ 4, 7, at 1.[4]  Counsel for Defined Fitness filed detailed billing records and an affidavit attesting to the veracity of the records in support of its motion for fees.  While the Court finds that Defined Fitness is entitled to a fee award, the Court believes that Defined Fitness is not entitled to all fees incurred since the inception of this case.

The Court has determined that Mayo should have been aware that her claims lacked merit following the briefing on summary judgment.  Mayo's counsel informed her and her husband in a phone call on September 5, 2003 that her claim lacked merit, that she was likely to lose, that she should accept Defined Fitness' settlement offer, and that he could not continue to represent her if she intended to continue her litigation of the meritless claims.  <u>See</u> E-mail message from Mayo to Bregman, dated September 12, 2003.  The Court will not award fees and costs incurred before September 5, 2003.

The fees and costs after September 5, 2003 total $20,005.25 and $489.08, respectively.  Because the Court has granted fees on only two of the six claims, the Court is inclined to reduce the fees by two-thirds.  Because Defined Fitness represented at the hearing on this motion that the "vast majority" of its work was directed to the discrimination claims on which the Court is granting fees, however, the Court will only reduce the total fees by only twenty-five percent.  Thus, the total fee award is $15,003.94.

---

[4] At the hearing on this motion, counsel for Defined Fitness represented that the actual amount of fees is $114,022.00 and that the $95,889.50 figure was a miscalculation of the total.  <u>See</u> Transcript of Hearing at 23.  Because the Court conducted its own calculations based on the billing records that Defined Fitness submitted, whether the total amount for the entire case is $95,889.50 or $114,022.00 is not material to the Court's ruling.

The Court finds it appropriate to consider Mayo's financial resources and ability to pay a fee award.  See Gibbs v. Clements Food Co., 949 F.2d 344, 345 (10th Cir. 1991)(holding that non-prevailing civil rights plaintiff's financial condition and resources are relevant to amount of attorney's fees to be awarded to prevailing defendant).  At the hearing on this motion, however, Mayo presented no evidence or argument regarding her financial status. The Court thus cannot take Mayo's financial status into account.

**IT IS ORDERED** that the Defendant's Motion for Attorney's Fees and Costs is granted in part and denied in part.  Plaintiff Herlinda C. Mayo shall reimburse Defendant Fowler Fitness, Inc. $15,003.94 in fees and $489.08 in costs.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:
Herlinda Mayo
Albuquerque, New Mexico

  *Pro Se Plaintiff*

Bryan T. Fox
Tracy Wolf
Wolf & Fox, P.C.
Albuquerque, New Mexico

  *Attorneys for the Defendant*

-18-